## Staunton.

### ALLEGHANY IRON COMPANY v. TEAFORD AND ANOTHER.

#### SEPTEMBER 22, 1898.

1. EVIDENCE—*Breach of Contract to Accept Goods—Delay in Acceptance.*—In an action to recover damages for the breach of a contract to accept and pay for iron ore at the contract price, evidence is admissible to show that the plaintiff has suffered loss from unreasonable and unnecessary delay on the part of the defendant in accepting ore which the plaintiff was ready and willing and offering to deliver.

2. EVIDENCE—*Breach of Contract to Accept Iron Ore—Silence of Contract as to Quality of Ore—How Quality Determined.*—In an action to recover damages for the breach of a contract to accept and pay for ore at a given price, where the contract fails to provide a method of determining whether the ore is of such quality as the defendant should have accepted, evidence is admissible to show that it was of such quality. In no other way could the jury determine whether the contract had been broken or not. In the case at bar, the contract provided that the quality of the ore should be determined by certain named agents of the buyer and seller, but failed to provide for the contingency of their disagreement, and hence evidence of the quality of the ore was admissible before the jury.

3. INSTRUCTION—*Refusal when Point Covered by other Instructions Given.*— It is not error to refuse to give an instruction when substantially the same ground is covered by another instruction which is given.

4. DAMAGES—*Breach of Contract—Delay—Absence of Fraud.*—Actual fraud is not an essential ingredient of the breach of a contract. If there has been unnecessary and unreasonable delay in the performance of a contract resulting in damages to the plaintiff he may recover such damages, though the defendant be guilty of no deception or fraud.

5. DAMAGES—*Breach of Contract—Delay in Permitting Performance—Profits.*— A plaintiff may recover damages sustained by him for loss resulting from unreasonable delay on the part of the defendant in permitting him to perform his contract, and, when he has been prevented by the defendant from completely performing his contract, he may also

recover the profit he would have realized if he had been permitted to perform it fully. This is not a double recovery. The object of the law in awarding damages is to make amends or reparation, by putting the party injured in the same position, as far as money can do it, as he would have been if the contract had been performed.

6. BREACH OF CONTRACT TO ACCEPT AND PAY FOR CRUDE ORE—*Measure of Damages in Case at Bar.*—Under the evidence in this case, the measure of the plaintiff's recovery for the breach, by the defendant, of its contract to accept from the plaintiff and pay him an agreed price for crude ore, is the difference between the cost of the ore to the plaintiff at the stipulated place of delivery, and the price the defendant agreed to pay for it.

7. ARGUMENT OF COUNSEL AGAINST OPINION OF THE COURT.—When the trial court has refused to give an instruction embodying a particular view of the case, it is not error to refuse to permit counsel to argue the same view before the jury.

8. APPEAL AND ERROR—*Verdicts—Evidence to Support.*—This court will not set aside the verdict of a jury and the judgment of the trial court thereon as contrary to the evidence, where it appears that there was evidence before the jury upon which to base the verdict.

Error to a judgment of the Circuit Court of Botetourt county rendered October 30, 1897, in an action of *assumpsit* wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Benjamin Haden* and *Bev. T. Crump,* for the plaintiff in error.

*George K. Anderson* and *J. W. Marshall,* for the defendant in error.

RIELY, J., delivered the opinion of the court.

This is a writ of error to a judgment rendered in two actions of *assumpsit,* which, being between the same parties and growing out of the same matter, were consolidated by the court.

On December 10, 1895, a contract was entered into between the Alleghany Iron Company and R. H. Teaford by which it agreed, among other things, to take from him 10,000 tons of iron ore from a certain mine, at $1.10 per ton. The ore was to be delivered at the mine in a crude state, on board of the cars of the company, and thence hauled to its washer and washed, the hauling and washing to be at its expense. J. E. Hannah acquired from Teaford an interest in the contract, became jointly interested with him in its performance and was united with him as co-plaintiff. They commenced to mine and deliver the ore in January, and continued to do so up to the 17th day of February, when the severity of the weather caused the pump connected with the washer to freeze and break, thereby preventing the washing of the ore, and stopping the plaintiffs from delivering it. The company did not resume operations until the 1st of June, when the plaintiffs again commenced to deliver ore under the contract, but the company rejected it in such quantity that they claimed the rejection to be improper, and a breach of the contract.

One of the suits was for the amount due for ore delivered in the month of June, and the other was for damages for breach of the contract.

The contract was in the form of a letter from the general manager of the company to Teaford, and accepted by him. It contained, among other provisions, the following:

"Should your superintendent from any cause ship us a car of material that, according to the judgment of our washer foreman, be unfit to wash, this car is to be side-tracked until your superintendent can go and look at it, and the two are to decide what is best to be done about this car, that is, whether it shall be dumped and thrown away, or washed, to arrive at its true value in comparison with the other cars."

On the trial, the plaintiffs introduced testimony to prove the damages resulting to them from the delay of the company in resuming operations, thereby preventing them from delivering any ore between the 17th of February and the 1st of June.

The defendant objected to the testimony, but the court over-ruled its objection and admitted the testimony. The admission of this evidence is the subject of the first bill of exception, and constitutes the first assignment of error.

The general manager of the company informed the plaintiffs of the injury to the pump, and assured them that a new one would be procured in five or six days, and the work proceed. Time went on, but the place of the broken pump was not supplied, nor the work resumed. Assurance was again and again given, when complaint of the delay was made, that the pump would be soon procured, whereby the plaintiffs were kept in a state of expectation and comparative idleness, waiting for the resumption of operations. After a delay of more than three months, extending from the 17th of February to the last of May, a second-hand pump belonging to the president of the defendant company, which had been used by him in a coal shaft, was brought, and work resumed, but this was not done until the president had purchased a tract of land in the vicinity containing iron ore, and the company had built a railroad to it of several miles, and gotten ready to mine and manufacture ore from it. Evidence had been introduced tending to prove that the long delay in procuring another pump and resuming work was unnecessary and unreasonable. Under these circumstances, evidence was admissible to show that the plaintiffs had suffered loss from the delay, and the court did not err in over-ruling the objection of the defendant.

The next assignment of error relates to the admission of testimony to prove that the ore in the cars which were side-tracked in June by order of the washer foreman was such as should have been received, and that it was improperly rejected. The propriety of admitting the testimony is very clear. The washer foreman and the superintendent had been unable to agree as to the ore. No provision had been made in the contract, in case of disagreement between the washer foreman and the superintendent, with respect to ore in cars that

should be side-tracked by order of the washer foreman on account of its unfitness, in his judgment, to be washed. In the absence of any such provision, the propriety of the rejection of the ore had to be settled in some other way. The company declined to arbitrate the matter, and there was no other way of settling it than by a resort to the tribunals of the land established for the adjudication of the rights of parties, and the settlement of controversies. The jury could not decide the question of fact in issue except upon evidence as to the character of the ore. Clearly, evidence for this purpose was pertinent and admissible. The case is wholly unlike that of *Condon* v. *S. S. R. Co.*, 14 Gratt. 302, relied upon by the plaintiff in error, and plainly distingushable from it. In that case the contract made the engineer of the railroad company the sole arbiter of all questions of law or fact arising under the contract. By its express terms his decision was to be " obligatory and conclusive between the parties, without further recourse of appeal." But in this case the washer foreman was not the sole judge or final arbiter of any dispute as to the ore. He had merely the power to have side-tracked any car containing material which he regarded as unfit to be washed, but its subsequent and final disposition was to be determined by the concurrent judgment of himself and the superintendent. He alone could not decide against its acceptance. If they differed as to the ore in any car which had been side-tracked, the contract not providing for such a contingency, the result was the same with respect to that particular ore as if no provision had been made in the contract for deciding a dispute as to any ore rejected by the company. In such case, if the parties could not agree upon some other mode of settling the dispute, resort must necessarily be to the courts, and the matter be there determined upon evidence as to the character of the rejected ore.

After the plaintiffs had concluded their testimony and rested their case, the counsel of the defendant moved the court to strike out all the testimony of the plaintiffs tending to show

loss during the cessation of the work from the 17th of February to the 1st of June, and also all testimony tending to show the judgment of other parties than the washer foreman as to the character of the ore rejected by him, and to exclude all of the said evidence from the consideration of the jury. The court rightly overruled the motion. The evidence was, as we have seen, properly admitted by the court, and being so admitted, the jury were entitled to consider it.

Upon the conclusion of all the testimony, the defendant offered ten instructions, which it asked to be given to the jury. The court refused to give the instructions or any of them, and gave instead three instructions for the plaintiffs, and two for the defendant. The refusal of the court to give the ten instructions asked for by the defendant, and the giving of instructions 1, 2, and 3, for the plaintiffs, constitute the next assignment of error. The court committed no error with respect to the instructions refused or given.

By instruction 1, the defendant asked the court to instruct the jury to disregard all evidence tending to prove loss resulting to the plaintiffs from the failure of the company to receive ore from them during the cessation of operations from the 17th of February to June 1, and by instructions 7, 8, and 9, which embodied the same principle, with more or less variation, it was asked to instruct the jury that the washer foreman was the sole judge of the fitness of the material in the cars, which were side-tracked by his order, to be washed. The impropriety of these instructions has already been shown in disposing of the exceptions to the admissibility of the evidence as to the loss resulting from the said delay, and of the evidence as to the character of the ore rejected by the washer foreman.

Instruction No. 2 given by the court for the defendant covers substantially the same ground as instruction 6 asked for by it, and the rejection of the latter instruction gives no cause for complaint.

Instructions 3 and 4, asked for by the defendant, propounded

the doctrine that no recovery could be had for damages resulting from the failure of the company to receive ore during the cessation of its operations from February to June, unless such failure was purposely caused by the company with the intention to deceive and defraud the plaintiffs. The principle enunciated by these instructions is not correct. It was not necessary to a recovery of damages for loss sustained in consequence of the protracted delay to receive ore that the delay should be the result of deception and fraud. Actual fraud is not an essential ingredient of the breach of a contract. If the failure to receive the ore was unnecessarily and unreasonably protracted, or the delay could have been avoided by due diligence, the plaintiffs were justly entitled to recover damages for any loss they could show that they had suffered in consequence of the delay.

Instruction No. 2 embodied the proposition that the plaintiffs could not recover damages for loss resulting from delay to receive the ore from February to June, and also for the profits that would have been realized if they had been allowed to deliver the whole amount of ore contracted for, upon the ground that such damages would be obnoxious to the objection of a double recovery. Instruction No. 5 propounded substantially the same proposition. We were cited to no authority to sustain it, and in our opinion it is not in accordance with the law. Such a recovery would not be double. The object of the law, in awarding damages, is to make amends or reparation. It aims to put the party injured in the same position, so far as money can do it, as he would have been if the contract had been performed. He is entitled to recover all damages resulting directly from its violation. There may be several elements of damage. It may, as in this case, consist of the expense incurred in taking care of unemployed stock, and paying the wages of idle employees that were necessary to the performance of the contract, while he was unnecessarily and unreasonably prevented from doing the work contracted for,

and may also consist of profits which would have been realized if the party had been allowed to complete the contract. Otherwise, a contract from which a profit was reasonably certain might result, without his fault, in an absolute loss to the party who should have realized the profit. One might enter into an agreement to do certain work at a stipulated time, which required for its performance teams and hands, and though ready to begin the work at the appointed time, be prevented by the other party from doing so through one pretext or another until the daily expenses of his equipment, of idle teams and hands, exceeded the entire profit to be expected from the performance of the work, and then finally not be allowed to do the work at all. Is it possible that, in an action for a breach of the contract, he could recover only the profits that he could show that he would have made from the performance of the work if he had been allowed to do it, and nothing for the loss resulting from the delay induced by the misconduct of the other party to the contract? If so, instead of gains or profits, he would have to suffer an actual pecuniary loss without fault on his part, but caused solely by the misconduct of the other party. Such a result would directly conflict with the very object of the law in awarding damages for the violation of a contract, which is to place the party injured pecuniarily in the same condition that he would have been if the contract had been kept and performed.

It is not clear what was the proposition intended to be enunciated by the 10th instruction. How were the jury to consider the ore sold and delivered to the Low Moor Iron Company? This is not plainly set forth. If its object was to require the jury to apply in reduction of the profits that the plaintiffs would have realized from the fulfilment of their contract with the Alleghany Iron Company any profit they had made on the ore sold and delivered to the Low Moor Company, there was in the first place no evidence of the amount, or that any profit was made; and secondly, if that was the object of the instruc-

tion, it was manifestly erroneous. It appeared in evidence that several months after the rupture of the contract, and the cessation of dealings under it between the parties, Teaford made a contract with the Low Moor Iron Company to furnish it with ore from the same mines from which he had contracted to supply the plaintiff in error. This contract was of a different nature, and upon different terms. It was not for the delivery of ore in a crude state at the mines as the case under the contract with the Alleghany Iron Company, but the ore was to be washed and made ready for market, or for use in the furnace. This contract required other equipment, and much additional expense to fulfil it. A washer had to be built and a track constructed to haul the ore, after being washed, to the Chesapeake and Ohio railway. This contract could not affect the amount of profits the plaintiffs were entitled to recover from the Alleghany Iron Company for its failure to take the residue of the ore it had contracted for. They were to be ascertained as of the time when, as well as the place where, the ore should have been accepted, and were to be measured by the difference between the cost of the ore to the plaintiffs delivered on board the cars of the company, and the price it had agreed to pay for it.

And the court having properly refused to give the instruction, it did not err in stopping the counsel of the defendant, on motion of counsel for plaintiffs, from arguing to the jury that the ore sold and delivered to the Low Moor Iron Company, or some part of it, should be deducted from the total amount of ore mentioned in the contract with the Alleghany Iron Company in considering the profits that might have been earned by the plaintiffs, and in stating to the jury that the subsequent sale and delivery of ore to the Low Moor Company could not affect the question of profits arising from a breach of the contract by the defendant, if they should find that there had been such breach.

The petition points out no error in the three instructions

given by the court for the plaintiffs. None is perceived, and their consideration may be dismissed without further comment.

This brings us to the last assignment of error, which was the refusal of the court to set aside the verdict and award a new trial. The grounds upon which this motion was based were the rulings of the court upon the trial, which have been already disposed of contrary to the contention of the plaintiff in error and need not be again discussed, and the additional grounds that the verdict was contrary to the evidence, and also excessive. These may be considered together.

The jury did not render a verdict for a "lump" sum, but itemized the several elements of damage. They allowed the sum of $720 for the ore delivered in the month of June, the sum of $200 for damages between February 17th and June 1st, and $2,181 for profit on the ore that was not allowed to be delivered.

The defendant admitted that it owed the sum of $564.97 for the ore it received in June. This, however, was only for the ore it accepted, and did not include anything for the ore it rejected. The plaintiffs claimed that the ore accepted and the ore rejected aggregated 607 $\frac{845}{2240}$ tons, which at $1.10 per ton amounted to $668.10. To this must be added the sum of $52.25, for lump ore, which was conceded to be due, thus making the whole amount $720.35. The testimony showed that the ore rejected was such as should have been received, and was sufficient to sustain the claim of the plaintiffs as to the quantity.

The plaintiffs in their testimony fixed their damages resulting from the cessation of operations from February 17 to June 1 at $600, and gave the reasons for their estimate. The jury allowed the sum of $200. Upon a review of the testimony, we are of opinion, without going into particulars, that it sustained the amount allowed by the jury. The plaintiffs made frequent complaints of the delay, which upon the evidence was unnecessary, and were assured that a new pump would be

speedily procured, and were kept in constant expectation that operations would be resumed. They had to feed and take care of several head of horses. They also had to keep their mining force partially organized, so as to be ready to deliver ore as soon as the company resumed operations, and suffered loss in other ways from the long delay.

The jury ascertained that the profits on the 7,931 tons of ore, which the plaintiffs were not permitted to deliver, was $2,181. This was an allowance of $27\frac{1}{2}$ cents profit per ton. There was evidence before the jury tending to show that the cost of the ore and the expense of mining and putting it on the cars, including a royalty of 25 cents per ton, was only 71 cents, thus affording a profit to the plaintiffs of 39 cents per ton. They had a contract with Tollifer, under which he was mining and putting the ore on the cars at the time of the breach of the contract at 50 cents per ton, which with the royalty made the entire cost 75 cents, thus showing a profit of 35 cents per ton, while the jury allowed only $27\frac{1}{2}$ cents per ton, they probably taking into consideration and justly making a " reasonable deduction for the less time engaged, and for release from the care, trouble, risk, and responsibility attending a full execution of the contract."

We are of opinion the verdict was not contrary to the evidence, nor excessive. The judment of the Circuit Court must be affirmed.

*Affirmed.*