# Wytheville.

## PERRINE E. PALMER, TRADING AS PALMER LUMBER COMPANY, v. CHARLES E. FROSST & CO., A CORPORATION.

### June 12, 1924.

1. SALES—*Meeting of the Minds of the Parties—Case at Bar.*—The determination of the instant case rested upon one question, viz:, "Did the plaintiff and defendant enter into a valid and binding contract as to the sale of the birch lumber, the subject of this controversy?" In the lower court the jury found that such a contract had been made and there was a verdict for plaintiff. Having due regard to the well established doctrine as to the setting aside of a verdict of a jury in a case where the evidence is conflicting, the trial court was of the opinion that the instant case did not fall within such limits, but that the evidence of the plaintiff failed, when considered as on a demurrer to the evidence, to establish such a completed contract as would entitle him to recover; that, while the evidence in the case, oral and documentary, is voluminous, the plaintiff at no time was able to "put his finger" on the precise bit of testimony that meets the acid test of the law of contracts, viz.: "A meeting of the minds of the parties;" and the holding of the lower court was sustained on appeal although the members of the Supreme Court of Appeals agreed that it was on the border line between affirmance and reversal.

2. APPEAL AND ERROR—*Conflicting Evidence—Weight to which Verdict is Entitled.*—The verdict of a jury is entitled to the most serious consideration, and will not be set aside by the Supreme Court of Appeals where it appears that there was evidence to support it.

Error to a judgment of the Circuit Court of the city of Richmond, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Fulton & Wicker*, for the plaintiff in error.

*Williams & Mullen, Guy B. Hazelgrove* and *T. Nelson Parker*, for the defendant in error.

Campbell, J., delivered the opinion of the court.

This is an action of assumpsit brought by the plaintiff in error (hereinafter called plaintiff) against the defendant in error (hereinafter called defendant), to recover the sum of $6,385.38 claimed to be due by reason of an alleged contract in regard to 56,467 feet of birch lumber, which plaintiff alleges he purchased from defendant.

In the year 1916, Charles E. Frosst, a resident of Montreal, Quebec, and president of the defendant corporation, became acquainted with the plaintiff, who at the time was sales manager for Woodward & Son, lumber dealers in the city of Richmond. At the instance of plaintiff, the defendant shipped four cars of birch lumber to Woodward & Son, to be sold on commission. Upon the arrival of the lumber, the same was placed in storage upon the yard of the Montague Manufacturing Company. In December, 1916, the plaintiff left the employ of Woodward & Son and entered business for himself, under the firm name and style of Palmer Lumber Company. During the period from December, 1916, to June, 1918, the lumber remained in storage, with no prospect of being disposed of. The World War was at the height of its fury and the lumber market was at a standstill. On June 7, 1918, plaintiff wrote defendant the following letter:

"Richmond, Va., June 7, 1918.
"Mr. Charles E. Frosst,
    "Care F. T. Crump,
        "Virginia Railway and Power Company, City.
"Dear Sir:
"We have an offer of $30.00 per thousand feet from the American Furniture and Fixture Company on the birch you have stored with Woodward & Son. We consider this a very low price and under normal conditions we would not advise you to take it. However, our experience has been, the longer a matter of this kind is carried over the more one loses, and while it seems like a bitter dose our judgment says to take it and forget it.

"Our commission will be five per cent or $1.50 per thousand.

"If you want us to make the sale please advise us.
                    "Yours truly,
                    "Palmer Lumber Company,
                        "By Perrine Palmer."

From the date of said letter until June, 1919, the conditions remained unchanged. The next time the matter was mentioned was when plaintiff was informed by Frank T. Crump, the statutory agent of Frosst & Company, that the lumber had not been disposed of. Plaintiff testifies that in this conversation he said to Crump: "I told Mr. Crump that I would buy the lumber if he would accept $30.00 a thousand f. o. b. Richmond. He said he would submit my offer to Mr. Frosst in Canada."

Following this interview, Crump, in the first part of July, 1919, delivered to the plaintiff the following telegram:

"Montreal, Quebec, June 17, 1919.
"Frank T. Crump,
 "1103 Power Building, Richmond, Va.
 "Let Palmer sell lumber if it needs (nets) us thirty.
        "Charles E. Frosst."

At the time this message was delivered to him, plaintiff testifies he stated to Crump: "I will buy this lumber at $30.00; understand I am not selling it for you, I am buying it." That in reply Crump stated: "That is all right, all we care for is to get $30.00 for it." As to this conversation plaintiff is corroborated by Miss Armentrout, his stenographer. Crump denies this conversation as detailed by the plaintiff, and gives his version of the transaction between plaintiff and himself as follows:

"Q. Tell what transpired after Mr. Palmer left Woodward & Son?

"A. The lumber was not sold before he left Woodward & Son, it hung on for some time. I saw Mr. Palmer frequently and we talked it over. Mr. Palmer's idea was to dispose of it at any time he could for him, and my attitude, or Mr. Frosst's, was to give Mr. Palmer the preference all the time in disposing of that lumber. There was no market for it at that time. Then Mr. Palmer, if I recall correctly, in 1919, made an offer for the lumber.. I submitted it to Mr. Frosst. His reply was the telegram, 'Let Palmer sell the lumber if it nets us $30.00.' I took the telegram to Mr. Palmer.

"Q. When did you take it to him?

"A. Immediately after the receipt of it, I think two days after the letter was mailed to Montreal. Mr. Palmer said there were some charges against the lumber, being in storage. I suggested that I would go down and see Woodward & Son and see what the

charges were. Mr. Palmer's reply was that he knew Woodward & Son and the people around there better than I did, that he could probably arrange it better than I could. The matter was left with Mr. Palmer. Mr. Palmer advised me later on that the charges were excessive, and my understanding with him was that he could not handle this lumber at $30.00 net to us with those charges. * * * *

"Q. Did Mr. Palmer ask you for the lumber or offer to pay the charges then?

"A. No; he never offered to pay the charges.

"Q. Did you consider the matter off?

"A. I considered the matter off.

"Q. Did you ever sell this lumber outright to Mr. Palmer?

"A. I did not."

During the interval from June 17, 1919, to March 3, 1920, numerous letters were exchanged between the parties. The letters, together with the various conversations between plaintiff, Crump and Frosst, compose, as claimed by plaintiff, the contract of sale of the birch lumber.

As the determination of this case rests upon one single question, we do not deem it necessary to enter more fully into details, or to set forth more extensively the evidence in the case.

At the June rules, 1920, plaintiff instituted his action and on December 29, 1920, the case came to trial before a jury and a verdict was rendered in favor of the plaintiff for the sum of $6,385.38, the full amount sued for.

On motion of the defendant, the trial court set aside the verdict of the jury, on the ground that the same was contrary to the law and the evidence, and granted a new trial.

On July 12, 1921, the case was again called for trial and thereupon a jury was sworn to try the issue joined; but neither party offering any evidence, a verdict was returned in favor of the defendant. The trial court refusing to set aside this verdict, on motion of the plaintiff the record was duly made up, signed and sealed by the judge thereof.

On June 12, 1922, the record was presented to the judges of this court and after due consideration of the same, a writ of error was refused by each of said judges. Thereupon, at the September term of the Supreme Court of Appeals at Staunton, the plaintiff, pursuant to section 6348 of the Code, tendered to the court, *in banc*, his petition, which petition was filed and a writ of error and supersedeas granted.

There being no dispute as to the general principles governing the law of contracts, we do not deem it necessary to enter upon a dissertation as to the component elements of a valid and binding agreement.

[1] The crux of this case is embodied in the answer to the question, "Did the plaintiff and defendant enter into a valid and binding contract as to the sale of the birch lumber, the subject of this controversy?"

Having due regard to the well established doctrine as to the setting aside of a verdict of a jury in a case where the evidence is conflicting, the learned judge of the trial court was of the opinion that the instant case did not fall within such limits, but that the evidence of the plaintiff failed, when considered as on a demurrer to the evidence, to establish such a completed contract as would entitle him to recover; that while the evidence in the case, oral and documentary, is voluminous, the plaintiff at no time was able to "put his finger" on the precise bit of testimony that meets the acid test of the law of contracts, viz.: "A meeting of the minds of the parties."

[2] That the verdict of a jury is entitled to the most serious consideration, and will not be set aside by this court where it appears that there was evidence to support it, is the established law of this jurisdiction. *Alleghany Iron Co.* v. *Teaford*, 96 Va. 372, 31 S. E. 525.

This case has been most ably argued; the light has been turned upon it from every angle; this court has given it the most serious consideration, the members thereof agreeing that it is on the border line between affirmance and reversal. While I am of the opinion that the evidence sustains the contention of the plaintiff and that the case should be reversed and a judgment entered for the plaintiff, the other members of the court are of the opinion that the answer to the question propounded, *supra*, should be in the negative, and that the case should be affirmed.

*Affirmed.*