Statement.

## Richmond.

## TIDEWATER PLUMBING SUPPLY COMPANY, INC.
## v. EMORY FOUNDRY COMPANY, A CORPORATION.

March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. SALES—*Rescission—Waiver of Right to Rescind by Buyer.*—Where a buyer, who has the right to rescind the contract of sale upon the failure of the seller to deliver the subject matter of the sale at the time specified, waives his right the contract is kept alive against the buyer as well as against the seller, and neither can sue the other except for a breach thereafter occurring.

2. SALES—*Rescission—Waiver of Right to Rescind by Buyer—Case at Bar.*—The instant case was an action by a seller of soil pipe for the recovery of damages for the breach of the contract by the buyer. The pipe was to be shipped in four shipments upon four different dates. Only one shipment was in fact made and that on a later date than the contract called for. No complaint was made by the buyer of the delay. The buyer wrote the seller in effect asking him to keep the contract obligatory but to postpone shipments until notified.

   *Held:* That as the buyer, notwithstanding the previous breach of the seller, sought to keep the contract alive in its favor, it also kept it obligatory against itself and waived its right to rescind for the breach of contract as to time of delivery.

3. SALES—*Action by Buyer—Measure of Damages for Breach by Seller.*—The measure of damages in an action by a seller against a purchaser on an executory contract for the sale of an article not manufactured at the time of the breach is the difference between the contract price and the cost of manufacturing and delivering the article.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*McBain & Halstead*, for the plaintiff in error.

*Roper & Cochran*, for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

When first presented, the petition for a writ of error in this case was refused by each of the judges of this court, but upon the filing of an amended petition, and in response to the earnest persistence of the attorney for the petitioner, the writ was granted.

The record presents no novel questions. We shall, therefore, content ourselves with making a brief statement of the controlling facts, and citing some of the authorities in which the legal principles involved have been fully and sufficiently expounded.

The pertinent facts are, that the petitioner, hereinafter called the vendee, bought on June 25, 1920, of the Emory Foundry Company, hereinafter called the vendor, 187.6 tons of cast iron soil pipe, the contract being evidenced by four separate orders, of which No. 3430 contains a memorandum, "Ship at once;" No. 3431, "Ship August 1;" No. 3432, "Ship September 1;" and No. 3433, "Ship October 1." These orders were received by the vendor June 28, 1920, and accepted July 7, 1920. The vendee wrote the vendor July 16, 1920, that the soil pipe covered by these orders must be shipped "tarred" as green pipe could not be used in that vicinity. The vendor agreed to this modification. The pipe was not shipped upon the dates specified, but no complaint whatever was made of that delay. The first and only shipment was 22.4 tons, which was made August 25, 1920, and this was paid for on some date

later than October 13th.   In the meantime, on October 2nd, the vendee wrote to the vendor asking that shipments of pipe on these orders be delayed until further notice, stating that it had recently received several cars previously ordered, and that it had no available room to receive any more stock.   In this letter the vendee also writes, "we, however, will probably be able to place same again in the next thirty days, and will then write you further regarding shipment."   It is manifest that there can be only one fair construction of this letter, namely, that it requested the vendor to keep the contract obligatory, but that further shipments be postponed until some later time to suit the vendee's convenience, and imposed upon the vendor, if acceded to, the obligation to complete the contract when demanded by the vendee at some later time.   The vendor, on October 4th, replied to this letter of October 2nd, acknowledging receipt of the request not to make any further shipments until further orders, and adding: "We are, therefore, holding shipments, and trust that we shall have instructions to ship these orders at an early date."   The vendor thus expressly agreed to defer the date of compliance, and consented to keep the contract in force.   No further orders having been given by the vendee for shipment, the vendor, on November 5th, wrote the vendee calling attention to the balance of approxinately 165 tons of soil pipe and fittings due on the contracts, referring thereto in these words:  "Which you requested us some thirty days ago to hold and ship when advised by you. We trust that you will soon be able to take care of some of this material."   To this the vendee, on November 8th, replied, saying:   "As soon as we are able to handle any more soil pipe we will let you know," adding, "Central Foundry Company, with whom we had some business placed, unloaded three car loads of pipe on us dur-

ing two days, and this has stocked us up pretty fully, but as stated above, when next in the market will certainly write you.    Thanking you for your kindness in this matter, we remain    *    *."    In the meantime there had been some lessening of prices, and the vendor offered to give the vendee the benefit of this decreased price.    This offer, however, was not accepted, and the vendee never ordered any further shipments on this contract.    There were some subsequent dealings between the parties upon different contracts, but nothing affecting the question further until after some other differences arose this motion was instituted for the recovery of damages for the breach of this contract.

There was evidence to the effect that the vendor would have shipped all of the rest of the commodity if it had been requested or allowed to do so by the vendee, and also evidence to the effect that the vendor, after the letter of October 2nd, bought additional material upon a high market in order to complete the contract, and that though requested by the vendor to be allowed to ship, the vendee declined to order or accept such shipment.    There was also evidence that the net profit which the vendor would have made upon this undelivered balance of 165.2 tons would have been $8.13½ per ton, and damages of $1,343.90 were claimed as resulting from the alleged breach; and this is the amount for which the jury returned a verdict, which the trial court refused to set aside.    It is the judgment upon this verdict which is here under review.

There are five assignments of error as to the granting of instructions offered and granted upon motion of the vendor.    The criticisms of these instructions appear to us to be unjustified, because neither of them denies the vendee's right to show a cancellation of the contract,

waiver, or any other legal defense.   They are all, natu-
rally, based upon the vendor's conception of his rights
under the contract, but each one is carefully drawn, all
are based upon sufficient testimony, and are well sup-
ported by many precedents, in this and in other juris-
dictions.

The principles applicable to cases of this character
have been recently discussed and elaborated in this
court in two cases.

[1] In *Norfolk Hosiery Co.* v. *Aetna Hosiery Co.*, 124
Va. 221, 98 S. E. 43, a recovery was permitted under
circumstances in many respects similar to those here
shown, and it is there held that "where a buyer who
has the right to rescind the contract of sale upon the
failure of the seller to deliver the subject matter of the
sale at the time specified waives his right, the contract is
kept alive against the buyer as well as against the seller,
and neither can sue the other except for a breach there-
after occurring."

[2] That is the case here.   This vendee evidently
sought, notwithstanding the previous breach by the
vendor, to keep the contract alive in its own favor, and
in doing this it also kept it obligatory against itself.

So in *Richmond Leather Mfg. Co.* v. *Fawcett*, 130 Va.
484, 107 S. E. 800, it is held:

"When the contracting party who is entitled to re-
scind a contract and sue for damages by reason of the
defaults of the other accepts a delayed delivery and
pays for same, he cannot rely upon antecedent breaches
to support a rescission.   If, at a later stage of the re-
lations between the parties, he wishes to exercise the
right of rescission, that right must rest upon a new
breach by the other contracting party.   *   *

"If failure to deliver according to the terms of a con-
tract gives the right to rescind, acceptance of a delayed

delivery and payment therefor, standing alone, is a waiver of the right and an election to hold the defaulting party to his contract. By his waiver the party entitled to rescission keeps the contract alive against the party in default, but he also keeps it alive in his favor and against himself, and neither can sue save for a breach thereafter occurring. This revival, so to say, of the contract, enables the party in default not only to complete the contract, if so advised, notwithstanding the previous default, but also to take advantage of any supervening circumstances which would justify him in declining to complete.

"A legal alternative is presented to a buyer entitled to rescind for a breach of contract by seller as to date of delivery. He can stand upon his legal rights, treat the contract as ended, and bring action for damages against the party in default; or he can accept the delayed delivery, pay for same, and thereby keep the contract alive, alike for himself and his adversary."

In *Eichelbaum* v. *Klaff*, 125 Va. 98, 99 S. E. 721, the question of waiver of original dates of delivery under contracts of sale arose, and it is shown that a vendee who has waived his right to cancel such a contract by accepting subsequent deliveries cannot thereafter refuse future deliveries and terminate the contract without notice, because he has previously waived his right to insist upon delivery in accordance with the terms of the contract.

[3] As to the measure of damages, which is referred to in one of the instructions, there seems to be no fair question, because both in *Alleghany Iron Co.* v. *Teaford*, 96 Va. 372, 34 S. E. 525, and *Worrell* v. *Kinnear Mfg. Co.*, 103 Va. 719, 49 S. E. 988, 2 Ann. Cas. 997, it is held that the measure of damages in an executory contract for the sale of an article not manufactured at the time of the

breach is the difference between the contract price and the cost of manufacturing and delivering the article; and this is the measure of damages applied against the vendee here.

Another recent and pertinent case upon the measure of damages is *A. I. M. Percolating Corp.* v. *Ferrodine Chemical Corp.*, 139 Va. 366, 124 S. E. 442.

That there is ample evidence to sustain the verdict of the jury is perfectly apparent, and the rule in such case as fixed by statute and frequently stated by this court need not be repeated.    *Wood & Co.* v. *Aronberg,* 132 Va. 126, 110 S. E. 351.    Whatever fair differences of opinion might have existed before the verdict are finally concluded thereby.

*Affirmed.*