# Wytheville

## DAVE GOLDSTEIN, ETC. V. OLD DOMINION PEANUT CORPORATION.

June 9, 1941.

Record No. 2364.

Present, Campbell, C. J., and Holt, Gregory, Browning and Spratley, JJ.

*Harry H. Kanter,* for the plaintiff in error.

*Breeden & Hoffman,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action brought by notice of motion for judgment to recover damages for breach of contract alleging that the defendant, Dave Goldstein, trading as Superior Bag and Burlap Company, the plaintiff in error here, failed or refused to deliver a certain number of burlap bags in accordance with a written agreement between the parties. The plaintiff in the trial court, Old Dominion Peanut Corporation, is the defendant in error here. The verdict of the jury, approved by the court, was in favor of the plaintiff for the sum of $1,167.19, with interest.

The amount of the recovery is not in dispute. The assignments of error are that the trial court erred in admitting certain evidence, in refusing to admit certain other evidence, and in granting plaintiff's instructions 1 and 2 and in refusing to grant defendant's instructions 1, 2, 3 and 5.

The evidence referred to as having been erroneously admitted by the court is that of prior and other dealings, of a similar nature, not admitted to vary or contradict the terms of the contract, but, to show whether or not the terms of the contract have been waived under the circumstances.

Also, the admission of certain letters, with reference to the contract and other similar contracts, which were introduced by the plaintiff, the objection to them being that they are self serving.

Also, the exclusion of certain copies of a journal called "The Daily Mill Stock Reporter" offered as evidence by the defendant.

The contract in issue is in the following words and figures:

"Sales Contract

## SUPERIOR BAG & BURLAP CO.
Cotton and Burlap Bags
3-5 Hall Street

Norfolk, Va., May 9, 1938

Telephone
44136

CONTRACT NO. 472

"SOLD TO Old Dominion Peanut Corp.
Norfolk, Virginia

"Gentlemen:

"We confirm and accept your order, as specified below: Quantity 30,000 40″, cut 45″, 10 oz. plain burlap bags, at $67.50 per thousand, F. O. B. Norfolk, Virginia. Delivery Date: Now to March 1939.

Terms: Net cash.

Shipping Directions: As instructed.

Remarks:

"Deliveries contingent upon strikes, labor disputes, or other causes beyond seller's control.

Seller: SUPERIOR BAG & BURLAP CO.
(S) D. GOLDSTEIN

Buyer: . . . . .........................
.... ...... ...................,.......

"(Prices on any undelivered portion of this contract are subject to increase or decrease by the amount that any new Federal and/or State legislation affects seller's cost and deliveries may be modified to the extent necessitated by any such legislation, and this clause is considered part of this contract.)

TWINE BARREL COVERS WIPING CLOTHS"

And a similar contract is in the following words and figures:

"Sales Contract

## SUPERIOR BAG & BURLAP CO.
Cotton and Burlap Bags
3-5 Hall Street

Telephone
44136

Norfolk, Va.
January 20, 1938

"CONTRACT NO. 3

SOLD TO Old Dominion Peanut Corp.
Norfolk, Virginia

"Gentlemen:
"We confirm and accept your order, as specified below:
"Quantity 10,000 40", cut 45", 10 oz Plain Burlap Bags,
@ $70.00 per M., F. O. B. Norfolk, Virginia
"Delivery Date: January through March 1938.
"Terms Net Cash.
"Shipping Directions: Ordered out as needed
"Remarks: Price guaranteed against decline on dates
of delivery.
"Deliveries contingent upon strikes, labor disputes,
or other causes beyond seller's control.
"Seller: SUPERIOR BAG & BURLAP CO.
(S) D. GOLDSTEIN

"Buyer:..............................
.......................................

"(Prices on any undelivered portion of this contract
are subject to increase or decrease by the amount that
any new Federal and/or State legislation affects seller's
costs and deliveries may be modified to the extent ne-

cessitated by any such legislation, and this clause is considered part of this contract.)

TWINE BARREL COVERS WIPING CLOTHS"

These contracts were introduced and designated as plaintiff's exhibits Nos. 1 and 2. There is little material conflict in the testimony. There were only two important witnesses; J. R. Worsham, who is the secretary and treasurer of the plaintiff company, and Dave Goldstein, who is the owner and directing head of the Superior Bag and Burlap Company. The testimony of the former is direct, clear and responsive. That of the latter is confused, hesitant and less definite.

The plaintiff urged that the defendant, by the course of dealings between them, and by admissions and assurances, oral and written, waived compliance with the strict terms of the contract in relation to the time of delivery of the burlap bags. The plaintiff, being here with the favor of a verdict of a jury, approved by the court, is entitled to have its version of the matter accepted as the true one. We have so often said this that no citation for its verity is needed.

Mr. Worsham testified that in the course of their dealings neither he nor Mr. Goldstein have held to a strict interpretation of the delivery date. Mr. Goldstein not only did not deny this but assented to it in effect if not in terms.

It will be noted that the delivery date written in the contract is this: "Delivery Date: Now to March 1939." The date of the contract is May 9, 1938. So that deliveries could be demanded at any time from the date of the contract to March 1, 1939. Dealings between the two contracting parties extended through a period of five years which included many contracts of a similar nature. Indeed, the first letter in evidence which the defendant wrote to the plaintiff on the subject of delivery was that of March 18, 1939, which listed and called attention to

contract No. 3, which is the second contract set out above. That letter is as follows:

"SUPERIOR BAG & BURLAP CO.

Norfolk, Va. March 18, 1939

"Old Dominion Peanut Corp.
Norfolk, Virginia.

"Gentlemen:
"In checking through our contract files, we find the following balances outstanding against *you* contracts.

 1-20-38 Contract No. 3 . . . . . . . . . . . . . . . . . . . .3,753
 5-9-38 Contract No. 472 . . . . . . . . . . . . . . .21,769

"We trust that you will find it convenient to let us have shipping instructions on some of these bags at an early date.
"Thanking you, we are
 "*Your* very truly,
 "SUPERIOR BAG & BURLAP CO.
DG:JT "(S) D. GOLDSTEIN."

The significance of this letter is several fold. It requests shipping instructions seventeen days after the expiration date for delivery under contract No. 472, which is involved in this case, and nearly twelve months after the expiration of delivery date of contract No. 3. It asks for shipping instructions, not on *all* of the bags, but on *some* of them, clearly showing that, even after the expiration of the delivery dates, it did not contemplate the delivery of all of them at that time. It ties together the two contracts, showing that there had been partial deliveries on each one. It contains no murmur or complaint that delivery of the remaining bags had not been demanded before.

It is in evidence that there were many such contracts and the custom was non-insistence upon anything like a strict compliance with the delivery dates.

The plaintiff replied to the above letter promptly, requesting the delivery of the residue of the bags on contract No. 3. This delivery was made and that contract was closed.

On July 6, 1939, an installment of 3,094 bags was delivered on contract No. 472. On September 5, 1939, the plaintiff wrote the defendant that it was just starting up its plant in Suffolk, Va., and the delivery of the remaining bags was asked for. To this letter there was no reply, except that in a conversation by telephone the defendant said that he would make delivery of the bags in a short time; that spot burlap was scarce at the time. Again on September 14th, the plaintiff wrote asking the defendant for some assurance that the bags would be delivered about the first week in October. There was no reply in writing to that letter. However, the defendant stated orally to the plaintiff that he expected to receive burlap the last week in September and would then arrange to deliver the remaining bags. In a letter of October 4, 1939, Mr. Goldstein was reminded by the plaintiff of the above assurance for which he expressed gratefulness.

On October 20, 1939, the plaintiff wrote another letter calling the defendant's attention to the matter and stating that its need of bags had become so urgent that unless delivery was made within a week it would be forced to purchase bags in the open market and charge defendant with the difference between the contract price of $67.50 per thousand and the current market price.

On October 23, 1939, the defendant, who had so long been silent, wrote the plaintiff repudiating the contract and refusing to make any further deliveries. Other letters were written by the plaintiff deprecating the attitude of the defendant and expressing its high regard for

him and the hope that an amicable settlement of the matter could be reached. This was of no avail.

The plaintiff purchased the bags which it needed, being approximately the number which the defendant refused to deliver, from the Planter's Nut & Chocolate Co. of Suffolk, Va., at $130.00 per thousand, which was much below the current market price. The amount of the plaintiff's recovery represents the difference between the contract price and that which it actually paid.

■ That the facts and circumstances shown by the evidence present an unequivocal waiver by the defendant of the contractual terms of delivery is beyond contention. It is a conclusion which is inescapable. A very clear and indisputable act of waiver by the defendant was the delivery on July 6th, 1939, of 3,094 bags on contract No. 472, which was the only contract then in existence between them. This was one hundred and twenty-six days after the delivery date as designated in the contract. It was seven months and twenty-three days from the last day of the contract date for delivery until the repudiation of the contract by the defendant. During this interim there were two deliveries of bags under the contract. There were at least three verbal assurances by the defendant that the contract would be lived up to. During that period there were seven letters upon the subject of the performance of the contract, one written by the defendant and six by the plaintiff. There were a number of personal visits between Mr. Worsham and Mr. Goldstein, in all of which the contract was discussed. And throughout these communications there was not one word from the defendant indicating a purpose not to live up to the provisions of the contract. On the contrary, his contrawise assurances led the plaintiff to believe that all was well.

Not until the European war broke out, which occasioned a large advance in the price of burlap, did the defendant, do what he said he never had done and never would do, ''renege'' on a contract, and he wrote: ''When

a concern writes us that they are buying bags against a contract which is not in force and charging us with the difference in price, we are going to live up to the contract period 100%.''

The whole setting points unmistakably to a waiver of the time for delivery of the bags, even if we take no account of the past contractual dealings between the parties. However, we are in agreement with the ruling of the trial court that the course of the dealings between them is admissible, not to vary the terms of the contract, but to show whether or not there had been a waiver of any of its conditions.

There is nothing strange or unusual in impleading the legal doctrine of waiver and asserting stout reliance upon it by the party advantaged by it. In American Jurisprudence, vol. 12, page 913, section 349, there is the following:

''Rights arising from delay in performance may be waived. When work is to be done by a time certain, the employer, by allowing it to go on afterwards, thereby treating the contract as still in force, waives the materiality of time and can claim only such damages as he has sustained by reason of the delay. In other words, even where time is of the essence, a breach of the contract in that respect by one of the parties may be waived by the other party's subsequently treating the contract as still in force.''

*Idem,* page 928, section 362:

''*Difficulty; Inadvisability; Pecuniary Loss.*—Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Parties *sui juris* bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The rights of the parties must be measured by the contract which they themselves made. A contract is not invalid, nor is the obligor therein in any manner dis-

charged from its binding effect, because it turns out to be difficult or burdensome to perform. It has been said that difficulties, even if unforeseen and however great, are no excuse, and that the fact that a contract has become more burdensome in its operation than was anticipated is not ground for its rescission.''

The above answers the contention of the defendant that supervening causes, which were not and could not have been in contemplation by the parties at the time of the making of the contract, intervened and made it inequitable to force him to the performance of conditions which were harsh in the extreme or suffer the perils of a damage suit.

Then, too, the evidence presents facts which are at odds with the above contention and which really demolish it, namely, the following portion of the cross examination of Mr. Goldstein:

''Q. That is the time that you say was different from any other time with respect to your bagging operation?

''A. We had burlap.

''Q. You had burlap?

''A. We had a certain amount of burlap, yes.

''Q. How much?

''A. I could not tell you that, sir.

''Q. Does your inventory show it?

''A. I imagine it would.

\* \* \* \* \*

''Q. Did you have any contracts in force as of September 5th at a like or comparable price to $67.50 per thousand?

''A. Yes, sir.

''Q. Did you thereafter fill those?

''A. Yes, sir.

''Q. You filled them?

''A. Yes, sir.

''Q. Did you buy, for future delivery, burlap to protect yourself against the market?

''A. I always do that.''

■ The above shows three important things: first, that at the time the alleged supervening cause came into the picture the defendant had burlap on hand; second, that he had other contracts in force as of September 5, at a like or comparable price to $67.50 per thousand and that he filled them; and, third, that he always bought burlap for future delivery to protect himself against the market. This, of course, does not coincide with the contention that he was caught unawares, but it does harmonize with his testimony to the effect that burlap had taken a sharp and decided advance and that it would be a losing transaction for him to deliver to the plaintiff some 18,000 bags at $67.50 per thousand when it would be perfectly possible for him to sell them in the market for something like $150.00 per thousand. Persons cannot contract against the hazards of eventualities. The only thing they can do is to adopt the very sensible scheme of the defendant and buy for future delivery as a protection against the market.

■ In Corpus Juris Secundum, volume 17, page 1080, section 506, under the heading "Mutual Waiver", we find the following: "Where both parties to a contract fail to perform their mutual covenants on the day named, they will be held to have waived its strict performance as to time, although it will be unimpaired as to its effect."

In the case of *Cocoa Products Co. of America* v. *Duche,* 156 Va. 86, 158 S. E. 719, is a very clear and informing opinion of this court, written by Mr. Justice Hudgins. The case of *Miller & Co.* v. *Lyons,* 113 Va. 275, 74 S. E. 194, 199, is cited with approval and from it is this quotation:

■ ■ "That covenants and stipulations made by a covenantor for his benefit may be waived by him, either by express terms or by a course of dealing, is a well-established principle in every system of enlightened jurisprudence. That a covenantor may, by his conduct, so lull his covenantee into a sense of security as thereby to estop

himself from the exercise of a right for which he had contracted is equally clear. Instances illustrating this principle abound in the law with reference to contracts of insurance, but its operation is not limited to any specific class of contracts and dealings between men. Such estoppels are founded upon principles of morality and public policy, their objects being to prevent that which deals in duplicity and inconsistency. *Bower* v. *McCormick*, 23 Gratt. (64 Va.) 310.''

. The case of *Fawcett* v. *Richmond Leather Mfg. Co.*, 155 Va. 518, 155 S. E. 714, is also cited with approval. It was there said, through Mr. Justice Gregory:

''A series of dealings in which delayed deliveries are accepted and paid for, and further deliveries demanded, justifies the party in default, in the absence of anything to the contrary, in concluding that the contract will not be rescinded on account of such delayed deliveries without notice. Under such circumstances, rescission without notice on account of delayed delivery will be in derogation of the accustomed course of dealing between the parties.''

It is thus seen that the Virginia cases are in harmony with the law as stated in the texts cited above. See, also, 24 Am. & Eng. Ency. of Law (2d Ed.), page 1105; Black on Rescission and Cancellation, 2 vol., sec. 604; *Frank* v. *East Carolina Lumber Co.*, 153 Va. 649, 151 S. E. 135; *Tidewater Plumbing Supply Co.* v. *Emory Foundry Co.*, 141 Va. 363, 127 S. E. 87; *Norfolk Hosiery & Underwear Mills* v. *Aetna Hosiery Co.*, 124 Va. 221, 98 S. E. 43; *James River Lumber Co.* v. *Smith Bros.*, 135 Va. 406, 116 S. E. 241; *Eichelbaum* v. *Klaff*, 125 Va. 98, 99 S. E. 721; Wigmore on Evidence (3rd Ed.), vol. II, sec. 377 (2) (a); Williston on Contracts (Rev. Ed.), vol. III, sec. 856, page 2399.

The authorities abundantly sustain the ruling of the trial court on the admission and exclusion of certain evidence which is the subject of challenge by the defendant.

 The letters introduced in evidence as plaintiff's exhibits throw light upon the contract in issue and upon the interpretation of the contract by the parties thereto. They should not have been ruled out as self serving communications. The court was plainly right. See *Gunther* v. *Hughes,* 143 Va. 36, 41, 129 S. E. 239.

What we have said in this opinion is applicable to the instructions which were given at the instance of the plaintiff and objected to by the defendant and also to the instructions offered by the defendant but refused by the court. The jury was properly instructed.

The judgment of the court is plainly right.

*Affirmed.*