𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## SOUTHERN AMUSEMENT COMPANY, INC., V. FERRELL-BLED-SOE FURNITURE COMPANY, INC.

### June 12, 1919.

1. APPEAL AND ERROR—*New Trial—Review in Supreme Court of Appeal in Case of Successive Trials.*—There were two trials in the instant case. At the first trial there was a verdict for the defendant which the trial court set aside on the motion of the plaintiff as contrary to the evidence, and the defendant excepted. At the second trial, the defendant offered no evidence, and there was a verdict for the plaintiff, which defendant moved to set aside, but the court overruled the motion and the defendant again excepted. Judgment was thereupon entered on the verdict for the plaintiff. On writ of error, in obedience to the statute (Code of 1904, sec. 3484), the Supreme Court of Appeals must examine the proceedings on the first trial first, and, if there was error in the action of the trial court, in setting aside the verdict, set aside all proceedings subsequent to the first verdict and enter judgment thereon for the defendant.

2. AGENCY—*Authority of Agent—Apparent Authority in Conflict with Real Authority—Case at Bar.*—While it is well settled that everyone who deals with an agent does so at his hazard, and is bound, at his peril, to take notice of the extent of, and the limitations upon, the authority of the agent, it is equally well settled that the principal is bound to the extent that he holds another out as having authority to act on his behalf.

3. AGENCY—*Authority of Agent—Apparent Authority in Conflict with Real Authority—Case at Bar.*—In an action against a principal on a contract made in its name by its agent with plaintiff for the purchase of furniture for a theater, defendant's testimony tended to show, and the agent testified, that he had no authority to act as the agent for his principal in making the contract in controversy. The agent was manager and in charge of defendant's theater and it appeared from the testimony that he had very broad powers. He had made

similar contracts with plaintiff before, which had been paid without question by defendant.

*Held:* From this and other evidence of like character tending to show the apparent scope of the agent's authority, that defendant was liable upon the contract in controversy.

4. AGENCY—*Authority of Agent—Benefit of Contract Accepted by Principal—Ratification—Case at Bar.*—In the instant case the defendant claimed that its agent was without power to make the contract in controversy. Defendant, however, accepted the benefit of the contract made for it and in its name, and was at the time of the trial enjoying the benefits of the contract. The proposal was in writing and addressed to defendant and was accepted on its behalf by the agent. Under these circumstances the defendant is bound by the contract. Having accepted its benefits, it must assume its burdens. The retention of the goods is evidence of a ratification by the defendant of the contract made on its behalf by its agent.

5. NEW TRIAL—*Verdict Without Evidence to Support it.*—Where a verdict is without evidence to support it, it is not error for the trial court to set it aside.

·Error to a judgment of the Corporation Court of city of Danville in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Harris & Harvey,* for the plaintiff in error.

*Withers, Brown & Leigh,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

[1]   This was an action of assumpsit brought by the defendant in error, hereinafter called the furniture company, against the plaintiff in error, hereinafter called the amusement company, on an open account. There were two trials of the case. At the first trial there was a verdict for the defendant which the trial court set aside on the motion of

the plaintiff as contrary to the evidence, and the defendant excepted. At the second trial, the defendant offered no evidence, and there was a verdict for the plaintiff, which defendant moved to set aside, but the court overruled the motion and the defendant again excepted. Judgment was thereupon entered on the verdict for the plaintiff. In obedience to the statute, we must examine the proceedings on the first trial first, and, if there was error in the action of the trial court, in setting aside the verdict, set aside all proceedings subsequent to the first verdict and enter judgment thereon for the defendant.

The sole error assigned is the action of the trial court in setting aside the first verdict. The plaintiff based its right of recovery on a contract alleged to have been made with the defendant, through its agent, M. F. Sohmer, claiming especially that Sohmer was held out by the defendant as having authority to enter into the contract. If, upon this claim the verdict of the jury at the first trial was without evidence to support it or was plainly contrary to the evidence, then the action of the trial court in setting aside the verdict was right, otherwise it was wrong.

The account sued on is for certain floor coverings, curtains, portieres, chairs, etc., furnished for the Majestic Theater building in the city of Danville, then being remodeled and equipped, and no question is raised about the fact that the items charged in the bill were furnished by the plaintiff, and that the prices charged therefor were reasonable; the only qustion being, who shall pay for them?

The plaintiff was a furniture dealer in the city of Danville, and the defendant was a corporation operating three theaters and moving-picture houses in said city, one of which was the "Majestic Theater." M. F. Sohmer had been in charge of this "theater," as agent for the defendant, for several years prior to the purchase of the goods in controversy and, while so in charge, had purchased numerous bills

of goods, some of considerable amount, from the plaintiff for the Majestic, and all of them had been paid without question by checks of the defendant presented by Sohmer. The account in suit is the first bill purchased by Sohmer of the plaintiff, or any one else, that was ever disputed by the defendant.

In 1917 an agreement was entered into between the owner of the "Majestic Theater" and the defendant, whereby the owner was to remodel and re-equip the building, and the tenant was to pay 10% of the cost thereof annually as increased rent. The articles mentioned in the account sued on were such as were necessary for said re-equipment. When the time came to purchase these articles, Sohmer went to Bledsoe, the vice-president of the plaintiff, and told him that Mr. Arey, the owner of the Majestic, was going to remodel and equip the "Majestic" for them on a 10% basis, and asked that plaintiff make a bid on specified furnishings, chiefly those mentioned in the account aforesaid. This request was at first declined, but subsequently when the matter was again brought to the attention of Bledsoe, a bid was submitted in writing to the plaintiff addressed to the Southern Amusement Company, defendant, and delivered to Sohmer. Shortly thereafter, at the request of Sohmer, the bid was changed so as to embrace some additional articles. This bid was also in writing, addressed to the defendant and delivered to Sohmer. The amended bill was subsequently verbally accepted by Sohmer. At no time did Sohmer say or intimate to the plaintiff that he was contracting or authorized to contract on behalf of Arey, the owner of the building. The testimony of Bledsoe on the subject of his conversation with Sohmer is in part as follows:

"When Mr. Sohmer told me that Mr. Arey was going to equip the building and asked for the bid on floor coverings, carpets, etc., I told him that if I made a bid it would be

made to the Southern Amusement Company, that Mr. Arey had never dealt with me or my concern, that I did not know him personally and did not care to submit a bid if Mr. Arey had anything to do with it, because I did not believe Mr. Arey would deal with me.

"With this information, Mr. Sohmer accepted the second bid addressed, as stated, to the Southern Amusement Company, and ordered the goods delivered, which was done. The larger part of the goods covered by the bid were not kept in stock by my company and had to be specially ordered, which was done according to Mr. Sohmer's directions, who selected the style and sort of goods desired."

[2, 3] It clearly appears that Sohmer had no authority to act for Arey. The only portion of Sohmer's testimony giving color to such authority was stricken out by the trial court, and no exception was taken to this ruling. The defendant's testimony tends to show, and Sohmer testified, that he had no authority to act as the agent of the Amusement Company in making the contract in controversy. But this is not enough. While it is well settled that every one who deals with an agent does so at his hazard, and is bound, at his peril, to take notice of the extent of, and the limitations upon, the authority of the agent, it is equally well settled that the principal is bound to the extent that he holds another out as having authority to act on his behalf.

In the case at bar, it appears from the testimony offered by the amusement company itself that Sohmer had very broad powers in connection with the management of the "Majestic." The vice-president of the defendant company, who was examined as a witness on its behalf, testifies as follows:

"Mr. Sohmer has charge of that theater. He supervises and directs its employees, sees that it is cleaned and kept in good condition, has charge of all performances and shows given there, makes and signs contracts with theatrical and

moving picture concerns for shows and exhibitions to be given there, as well as with the management of all concert companies, local and amateur performances, and fixes the times and dates of such performances, exhibitions, etc., as well as the terms upon which all shows, pictures and entertainments are given at the Majestic. He has charge of the tickets and their sales, collections and proceeds and either accounts to me for them or deposits them in bank, rendering me statement of same. He also has charge of all advertising for said theater, makes contracts therefor and attends solely to same. He likewise buys supplies as they are needed in small quantities from time to time and we have always paid for same as the bills were presented when O. K'ed by him. We have never questioned or refused to pay a bill incurred by him heretofore. We have never given any notice to the public or those with whom we deal as to the scope of his authority or what limitation there was upon it.

"I was aware that the Ferrell-Bledsoe Furniture Company were putting in floor coverings, draperies, etc., the price of which is in controversy here, saw their men at work, did not object to the floor coverings, draperies, etc., being put in, and have never done so. They are now in the Majestic Theater where they have been ever since they were first put in and are used by the said theater and its patrons, but belong to Mr. Arey and should be paid for by him.

"They have never been paid for in whole or in part by my company and have not been returned and no offer has been made to return them."

M. F. Sohmer, testifying on behalf of the defendant, says: "I do almost anything at the Majestic Theater * * * buy needed supplies * * * have no authority to draw or sign checks. Have not made purchases of large amounts, but buy all needed supplies from time to time and pay for them by the Southern Amusement Company checks." In

another connection, referring to the items charged in the account in controversy, he says: "These new ones were necessary equipment to conduct a theater in the building."

To this must be added the testimony of the vice-president of the plaintiff company, as follows: "Mr. Sohmer had hitherto purchased considerable bills from my concern for the Majestic Theater which had always been paid by checks of the Southern Amusement Company, brought to the store by Mr. Sohmer, and no bill presented by my concern to said company has ever been questioned prior to this one, though I had frequently sold accounts of considerable amount to Mr. Sohmer for the Majestic Theater, which were always promptly paid by the Southern Amusement Company. Mr. Sohmer was advertised and known as the manager of the Majestic Theater, and I knew nothing of any limitations or restrictions upon his authority. The Southern Amusement Company bought goods from me for the Bijou and Broadway as well as the Majestic, but accounts were always kept separate on my books, and ever since Mr. Sohmer took charge of the Majestic all transactions and dealings for that theater with my concern were had with him."

There is nothing in the record in denial of this manner and extent of "holding out," and we are of opinion that it is sufficient to hold the amusement company liable upon the account in controversy. Sohmer was publicly recognized and known as the manager of the "Majestic," and had been for years. He had power to contract with theatrical and moving picture concerns for shows and exhibitions, regardless of the amount involved, and to make any contract he thought proper for advertising the same, and to buy supplies from time to time as needed, and had previously purchased of the plaintiff for the "Majestic Theater" considerable bills, "some of considerable amount," all of which had been promptly paid by the amusement company, and the company has "never questioned or refused to

pay a bill incurred by him heretofore." His position as "manager," his recognized right to purchase all needed supplies, his admitted power to contract, the recognition and payment of every bill heretofore made by him, and particularly the prior dealings between the plaintiff and the defendant, well warranted the plaintiff in extending the credit given to the defendant and in looking to it for the payment of the articles ordered by Sohmer.

[4]   Furthermore, even if Sohmer was without power to make the contract, the defendant accepted the benefit of the contract made for it and in its name, and is today enjoying the benefits of it. The proposal was in writing and addressed to the Southern Amusement Company and was accepted on its behalf by Sohmer. Under such circumstances the defendant is bound by the contract. Having accepted its benefits, it must assume its burdens. *Owens* v. *Boyd Land Co.,* 95 Va. 560, 28 S. E. 950. If it was the duty of the landlord to pay for these furnishings and he refused to do so, it is not to be presumed that he would have objected to their removal by the defendant except for good cause. The retention of the goods, under the circumstances, is sufficient evidence of a ratification by the defendant of the contract made on its behalf by Sohmer.

The defendant itself, in the inception of the case, insisted that the landlord should be sued with it for the amount. When Sohmer notified the plaintiff that Arey (the landlord) would not pay, he says he told Mr. Bledsoe "that he would have to sue Mr. Arey and us jointly to get his money," and Bledsoe testified that "some ten days later I saw Mr. George W. Prior and Mr. John F. Prior (directors of the defendant) and they told me that the Southern Amusement Company would pay the costs and the whole of it if we lost, provided we would sue said company and Mr. Arey jointly." When the grounds of defense were first filed in the cause, it was therein stated that E. C. Arey is the *real and true*

*defendant* and is liable for said sum in full; that he has had notice of this defense, and "it asked that he be made a defendant in this cause;" and, at a later term when the case was set for hearing, "the said defendant moved the court to make E. C. Arey a party defendant in the cause," which the court refused to do. These proceedings seem to indicate that defendant admitted that it was liable to the plaintiff for the amount of the account, but that, for some reason not disclosed by the record, it considered Arey as the party primarily liable, and that it could in this proceeding compel the plaintiff to enforce the primary liability.

[5] The liability of the defendant, upon the grounds stated, is fully established by the uncontradicted evidence in the cause, and the verdict of the jury on the first trial finding the contrary was without evidence to support it. It was not error, therefore, for the trial court to set it aside. It is unnecessary to cite authority to support the proposition that it is proper for the trial court to set aside a verdict when there is no evidence to support it. The jury was not instructed on this subject and seems to have acted in ignorance of the law applicable to the facts.

It is unnecessary to discuss other questions raised and discussed both in the briefs and oral arguments.

For the reasons hereinbefore stated, the judgment of the corporation court will be affirmed.

*Affirmed.*