## Richmond.

## ATLANTIC COAST LINE RAILROAD COMPANY V. A. M. WALKUP COMPANY, INC., and SEABOARD AIR LINE RAILWAY COMPANY.

### March 16, 1922.

### Absent, Burks, J.

1. *Officers and Agents of Private Corporations—Railroad Engineer— Scope of Authority—Case at Bar.*—In the instant case, plaintiff, a contractor, entered into an agreement with the Atlantic Coast Line and the Seaboard Air Line to erect a station, each company to pay one-half the cost. By the terms of the contract the work of construction was to be under the supervision of the chief engineer of the Seaboard. After work under the contract had begun, as it was desired to change the location of the station, the chief engineer of the Seaboard ordered the work to stop, and agreed with plaintiff for a sum as additional compensation to compensate them for stopping the work.

    *Held:* That the chief engineer of the Seaboard was acting as agent for both roads, and, moreover, his action was ratified by both companies by their conduct in consenting to the change of location and in contributing money towards the cost of removal.

2. CONTRACTS—*Damages for Unreasonable Delay in Permitting Party to Perform his Contract.*—A plaintiff may recover damages sustained by him for loss resulting from unreasonable delay on the part of the defendant in permitting him to perform his contract.

3. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS—*Railroad Engineer—Scope of Authority—Case at Bar.*—Plaintiff, a contractor, entered into a contract with the Seaboard Air Line and the Atlantic Coast Line to erect a union station, each company to pay one-half the cost. By the terms of the contract, the work of construction was to be under the supervision of the chief engineer of the Seaboard. After work under the contract had begun, as it was desired to change the location of the station, the chief engineer of the Seaboard ordered the

work to stop, and made a new contract with plaintiff for re-moving the building to the new site.

*Held:* That the work of removal and rebuilding was done under a new contract, and the chief engineer of the Seaboard had no authority to bind the Coast Line; and that, knowing it was working under a new contract, plaintiff was charged with the duty of inquiring as to the extent of the authority of the chief engineer of the Seaboard to bind the Coast Line.

4. APPEAL AND ERROR—*Judgment by Appellate Court—Section 6365 of the Code of 1919.*—Where there is no reason to believe that, upon another trial, any new or different evidence would be introduced which ought to affect the result, and the facts before the Supreme Court of Appeals are such as to enable the court to attain the ends of justice, it should proceed to dispose of the case under section 6365 of the Code of 1919, and enter final judgment upon the merits.

Error to a judgment of the Hustings Court of the city of Petersburg in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed in part and affirmed in part.*

The opinion states the case.

*Wm. B. McIlwaine* and *Mann & Townsend,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson, D. C. O'Flaherty* and *Edmond M. Preston,* for the defendant in error.

WEST, J., delivered the opinion of the court.

In 1915, the Florida Railroad Commission entered an order requiring the Atlantic Coast Line Railroad Company, hereinafter called Coast Line, and the Seaboard Air Line Railway Company, hereinafter called Seaboard, to build a union station at the intersection of the two roads at Ocala, Florida, the station to be located on the Carmichael prop-

erty, in the northwest angle made by the crossing of said roads.

On April 16, 1916, the railroad companies entered into an agreement with A. M. Walkup Company, Incorporated, hereinafter called Walkup Company, to erect the station for the sum of $15,500, to be paid one-half by each company. The work of construction, which, under the terms of the contract, was under the supervision of W. D. Faucette, chief engineer of the Seaboard, or his duly authorized representatives, was begun on April 26, 1916.

On July 1, 1916, Walkup Company received a telegram from Faucette ordering it to stop work. On July 3, 1916, the council of the city of Ocala held a special meeting to consider the proposed change of site of the union station to the Masters property, in the southwest angle of the crossing. The location of the Carmichael property being such as to create the necessity for the public to cross the main line and yard tracks of the Seaboard in reaching the union station, Vice-President Sedden, of the Seaboard, who was present at the council meeting, wrote the president of the city council on July 7, 1916, that his company would pay $15,000 on account of the Masters property, provided the city would, among other things, secure the Masters property for the Carmichael lot and $20,000, and secure the consent of the Railroad Commission for moving the station.

In consideration of a conveyance of the Carmichael property and the payment of $20,000, of which $15,000 was paid by the Seaboard and $5,000 by the Coast Line, the Masters property was conveyed to both roads in equal shares.

In August, 1916, after bids were received for the work, a contract was entered into between the Seaboard engineers and Walkup Company, "to take down the building as it then stood and remove it across the track and rebuild it to its then condition—to the same extent of completion that it was at that time," for $5,400. The contractor was not per-

mitted, however, to resume work until June 20, 1917, and in the meantime the United States government had entered the war, and the price of labor and material had increased to such an extent that the contract could not be completed except at a loss.

In a conference, held June 18, 1917, at which the Coast Line was not represented, the Seaboard engineers in charge of the construction work agreed Walkup Company should be allowed an additional sum of $3,639.23 "to compensate for increased cost of labor and materials and other expenses which resulted from stopping the work on the union station in 1916."

Upon final completion of the building, there was due and unpaid to the contractor a balance of $3,552.25, with interest from May 28, 1920, which each railroad claimed the other owed, to recover which this suit was instituted against both companies.

The jury returned a verdict in favor of the Seaboard and against the Coast Line for the amount claimed, and judgment was entered accordingly.

The case is before us upon a writ of error granted the Coast Line, and upon the motion of the Seaboard to be dismissed as a party to the petition of the plaintiff in error.

The contention of the Seaboard is that, under the original contract of April 16, 1916, each road was severally liable for fifty per cent of the cost of construction of the station on the Masters property; that the extra allowances of $5,400 and $3,639.23, aforesaid, were properly allowed thereunder by the supervising engineers, as a part of the cost of construction, and that it has paid its half under that contract. While the contention of the Coast Line is that, under said original contract, it is liable for only one-half of the original contract price, $15,500; that the allowances aforesaid were made under new contracts entered into between Walkup Company and the Seaboard engineers, without authority on their part to bind the Coast Line to pay any part of said allowance; that it has agreed to pay no part of the

$3,639.23, and only $2,000 on the cost of removal, and has paid all it owes the plaintiff.

[1] It is admitted that W. D. Faucette, supervising engineer, had authority, under the contract of April 16, 1916, to direct the work. When he, or his authorized representative, ordered the work stopped, he was acting as the agent of both roads, and his action in this respect has been ratified by both companies by their conduct in ·consenting to the change of location and in contributing money towards the cost of removing and rebuilding the station on the Masters property. The delay occasioned by this order resulted in damages to the contractor, for which both railroads are liable, under said contract of April 16, 1916. The adjustment, by the engineer in charge, of the contractor's claim for damages occasioned by the delay was reported to both defendants, and, while they disagree as to what portion each should pay, neither one contends that the allowance agreed upon was unreasonable.

[2] It is held in *Alleghany Iron Co.* v. *Teaford,* 96 Va. 372, 31 S. E. 525, that "a plaintiff may recover damages sustained by him for loss resulting from unreasonable delay on the part of the defendant in permitting him to perform his contract."

The written contract of April 16, 1916, does not provide for the taking down, removal and rebuilding of the station at a new location after it was partly completed, and contains nothing which can be construed, expressly or by implication, to bind either party to pay any portion of the expense incurred for that purpose.

The Coast Line gained nothing by the change of location, and refused at all times to pay one-half of the cost of the Masters lot, or one-half the expense of removing the station and rebuilding same thereon, and as soon as it learned that Engineer Faucette was attempting to bind the Coast Line to pay one-half the cost of removal under the original

contract, his authority in that respect was repudiated by J. E. Willoughby, chief engineer of the Coast Line.

It plainly appears from the correspondence between W. D. Faucette, chief engineer of the Seaboard, and the Coast Line officials that the agreement was that, for cost of removal, the Coast Line would pay only $2,000, the city of Ocala having agreed to pay the remaining $700. Engineer Faucette acknowledges this in his letter of August 4, 1916, addressed to J. C. Muchison, general superintendent of the Coast Line, in which he says the Coast Line will pay $7,000 and no more—$5,000 on the Masters lot and $2,000 on cost of moving the station. In the same letter he says, as soon as permission can be obtained to go on the Masters property, he will have the contractor start moving the building, evidently relying on the city of Ocala, or the Seaboard, whose employee he was, to pay the $700, which the Coast Line refused to pay. The president of the city council of Ocala telegraphed W. L. Seddon, vice-president of the Seaboard, on July 21, 1916, as follows: "The city council will pay $700 for A. C. L., amount lacking for their part moving depot. Am taking matter up with Railroad Commission."

The testimony shows that the bid of Walkup Company for removing and rebuilding the station, which was accepted by the engineer, was not the only bid received for that work, President Nash, of the Ocala city council, having put in a bid for another contractor.

[3] J. N. Locknane, secretary and treasurer of Walkup Company, testified that "this contract for removing the building over to the other site was a separate contract, of course, * * * and we proceeded under his (Faucette's) authority the same as we had done on the other work." Knowing they were working under a new contract, Walkup Company was charged with the duty of inquiring as to the extent of the authority of Engineer Faucette thereunder to bind the Coast Line.

On June 20, 1917, J. E. Willoughby, chief engineer of the Coast Line, notified W. L. Darden, assistant engineer of the Seaboard, that the Coast Line would pay only $2,000 of the cost of removal, and would pay that to the Seaboard direct. And on July 16, 1917, when Willoughby received contractor's estimate No. 4, the first after the work was resumed, he objected to the estimate, and on August 20, 1917, notified Walkup Company that the Coast Line would not honor vouchers for any portion of the $5,400, cost of removal, and that they must look to the Seaboard for payment of same. At this time sixty per cent of the station was yet to be completed, which gave Walkup Company ample opportunity to protect itself, if any action was deemed necessary on its part.

In view of the foregoing facts, it is clear that the work of removal and rebuilding was done under a new contract, and not under the contract of April 16, 1916, and the Seaboard engineers had no authority to bind the Coast Line to pay any portion of the $5,400, the Coast Line being liable for only $2,000, which it had agreed to donate on the cost of removal, and which it has paid, under a special agreement.

The verdict is, therefore, contrary to the evidence, and will be set aside, but no new trial will be granted.

The Seaboard insists on its motion to be dismissed as a party defendant, and relies on the opinions of the court in *Walton* v. *Miller,* 109 Va. 210, 53 S. E. 458, in which it is held that joint *tort-feasors* are jointly and severally liable, but that no right of contribution exists among them, or remedy over by one against the other; and that, if proceeded against jointly, the plaintiff may dismiss or discontinue his action as to one defendant without affecting his rights against the other. We do not regard this authority as controlling in the instant case, which is a suit upon contract, wherein we cannot say, under the evidence, that there exists no right of action, or remedy over by one defendant

against the other; and if there be such right, it is proper that the Seaboard be retained as a party so that the court may attain the ends of justice.

The facts in evidence show that the Seaboard, acting through W. D. Faucette, its chief engineer, assisted by its vice-president in conducting the negotiations, made the contract of removal with Walkup Company and had full charge of the work. Being a *new* contract, it was in no way affected by the terms of the contract of April 16, 1916, requiring each road to pay fifty per cent of the cost of the construction of the station. Having no authority to bind the Coast Line to pay any portion of the $5,400 cost of removal, Engineer Faucette was necessarily making a contract for the Seaboard. As chief engineer of the Seaboard, he was in charge of all its building operations and was presumed to have authority to bind it in contracts made touching such matters. And at the time the agreement was made by him to pay Walkup Company $5,400 for cost of removal, Walkup Company was working under a contract said Faucette, representing the Seaboard, made with it for the erection of a station at Charlotte, N. C. It is held in *S. Am. Co.* v. *Ferrell-Bledsoe Furniture Co.*, 125 Va. 429, 99 S. E. 716, that "the principal is bound to the extent that he holds another out as having authority to act on his behalf."

When the Coast Line refused to pay more than $2,000 of cost of removal, the Seaboard secured the promise of the Ocala city council to pay the remaining $700, and the Seaboard has the same right to demand payment of the $700, with interest, from the city of Ocala that it had to collect the $2,000 from the Coast Line.

The Seaboard accepted the benefits of the contract made for it in its name by its engineer, Faucette, who had no authority to make a new contract for the Coast Line. Faucette, as engineer of the Seaboard, acting within the scope of his employment, dealt with the Walkup Company with respect to the removal work upon the same basis as under

the contract of April 16, 1916, and that the Coast Line was liable to it for one-half of the cost of removal. Walkup Company relied upon this representation by Faucette and proceeded with the work of removal and undertook to hold the Coast Line for one-half of the amount due therefor. If the Coast Line pays one-half of it, the Seaboard will be benefited that much.

If there is no dishonest intent, but a false statement of a fact on which the other party acts to his injury, the *fraud* is *constructive*. *Stevens* v. *Alabama State Land Co.*, 121 Ala. 450, 25 So. 995.

In *Barwick* v. *English Joint Stock Co.*, L. R. 2, Exch. 259 (which was an action *in delicto* against a corporation for the misrepresentation of one of its servants), Willis, J., in delivering the opinion of the court, said: "With respect to the question whether a principal is answerable for the act of his agent in the course of his master's business, and for his master's benefit, no sensible distinction can be drawn between the case of fraud and the case of any other wrong. The general rule is that the master is answerable for every such wrong of the servant or agent as is committed in the course of his service and for the master's benefit, though no express command or privity of the master be proved."

It follows that it is right and proper to require the Seaboard to pay the plaintiff the $700, with interest, which it cannot recover from the Coast Line, and which the city of Ocala promised to contribute toward the expense of removal, rather than to require Walkup Company to look to the city of Ocala, with which it had no contractual relations, for it.

Nothing in this opinion, or in the judgment of the court, is intended, or shall be construed, to be an adjudication of any claim which either the Coast Line or the Seaboard may have against the other, or which the Seaboard may have

against the city of Ocala, Fla., on account of the building of the union station at Ocala.

[4] In our view of the case, it is unnecessary to consider further the various assignments of error relied on by the plaintiff in error. There being no reason to believe that, upon another trial, any new or different evidence might be introduced which ought to affect the result, and the facts before the court being such as to enable the court to attain the ends of justice, we shall proceed to dispose of the case under section 6365 of the Code, and enter final judgment upon the merits.

For the foregoing reasons, we are of opinion, as already stated, that the verdict of the jury should be set aside, and also the judgment complained of; that the motion of the Seaboard to be dismissed should be denied; and that the plaintiff is entitled to recover from the Seaboard Air Line Railway Company the sum of $843.24, with interest on said $843.24 from May 28, 1920, till paid, and from the Atlantic Coast Line Railroad Company the sum of $2,709.01, with interest thereon from May 28, 1920, till paid, and its costs against said companies jointly. And judgments will be entered here accordingly.

*Reversed in part and affirmed in part.*


REHEARD, WYTHEVILLE, JUNE 15, 1922.


WEST, J., delivered the opinion of the court.

We are asked to reopen and rehear this case for reasons stated in the petitions of the Seaboard and the Coast Line, filed at Richmond. No questions are discussed in the petitions, however, which were not discussed and considered at the hearing of the case. But the former opinion has been amended so as to answer further some of the arguments urged in the petitions for a rehearing.

It appearing that an error was made in ascertaining the amount of the judgment to be entered against the Seaboard, the judgments heretofore entered herein will be so amended as to allow the A. M. Walkup Company, Inc., to recover of the Seaboard Air Line Railway Company the sum of eight hundred and forty-three and twenty-four-hundredths dollars, with interest at six per centum per annum from the 28th day of May, 1920, until paid, and from the Atlantic Coast Line Railroad Company the sum of two thousand, seven hundred and nine and one-hundredth dollars, with interest thereon from May 28, 1920, till paid, and its costs against said companies jointly. To this extent, we have reviewed the case upon the petitions for rehearing, and in all other respects the rehearings are denied.

*Rehearing denied.*