PRESENT:  HASSELL, C.J., KEENAN, KOONTZ, KINSER, LEMONS, AGEE, JJ., and CARRICO, S.J.

BLAKE CONSTRUCTION CO., INC./
POOLE & KENT

OPINION BY
v.  Record No. 022075                JUSTICE G. STEVEN AGEE
                                        OCTOBER 31, 2003
UPPER OCCOQUAN SEWAGE AUTHORITY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Hon. Jane M. Roush, Judge

Blake Construction Co., Inc./Poole & Kent ("the Joint Venture") appeals orders by the Circuit Court of Fairfax County entered in proceedings brought by the Joint Venture against the Upper Occoquan Sewage Authority ("UOSA").

On appeal, the Joint Venture assigns as error the trial court's sustaining of UOSA's demurrer to Count I of the Joint Venture's amended motion for judgment and declaratory judgment which alleged that certain provisions of a contract between the parties were unenforceable and void as against public policy under Code § 2.2-4335(A).  The Joint Venture also assigns as error the trial court's dismissal of a claim for damages on the grounds that the Joint Venture failed to give a timely notice of claim, and alternatively on the basis of the jury's special verdict finding.  For the reasons that follow, we will affirm in part and reverse in part the judgment of the trial court.

## I.   BACKGROUND

This litigation involves multiple disputes arising out of a contract for construction of a waste water treatment facility located in Fairfax County (the "Project").  UOSA, the owner of the facility, is a public authority created pursuant to the Virginia Waste and Water Authorities Act, Code §§ 15.2-5100 through -5158, to provide waste water reclamation for its member jurisdictions, the counties of Fairfax and Prince William and the cities of Manassas and Manassas Park.  As a public authority, UOSA is subject to the Virginia Public Procurement Act, Code §§ 2.2-4300 through -4377[1] (the "VPPA").

Blake Construction Co., Inc. and Poole & Kent Corporation formed the Joint Venture in order to submit a bid for the Project.  The Joint Venture's bid was successful, and the Joint Venture agreed to furnish all labor, materials, and equipment for the Project in a contract dated December 10, 1996 (the "Contract").  The Contract allows the Joint Venture to obtain an increase in the contract price and/or an extension of time to complete certain work upon written application to UOSA pursuant to procedures set forth in the Contract.

---

[1] At the time the claims at issue in this appeal arose in the trial court, the VPPA was codified at Code § 11-35 et seq., but was recodified at Code § 2.2-4300 et seq. by the General Assembly in 2001.  We will refer to the corresponding provisions of the current Code of Virginia in this opinion.

The Joint Venture began work on the Project in January 1997 which is ongoing at the time of this appeal. During the course of the work, numerous changes were made to the original contract, some of which are in dispute and resulted in the proceedings now at bar.

The VPPA allows a contractor on a public project to appeal an adverse final decision by a public owner on its claim. See Code § 2.2-4363. Under the statute, a contractor may obtain a de novo determination of its claim in the circuit court provided it institutes legal action "within six months of the date of the final decision on the claim by the public body." Code § 2.2-4363(D). As the Project remains ongoing, this has engendered litigation by the parties during the construction process. On May 26, 2000, the Joint Venture filed the first of several related suits appealing adverse claim decisions by UOSA and subsequently filed additional suits. The trial court consolidated six of those suits (the "consolidated cases") by order, including the matters now at bar.

In addition to contesting specific claims for particular items, the Joint Venture also sought a declaratory judgment that certain Contract provisions, General Conditions 91.K and 91.L, were prohibited by Code § 2.2-4335(A) and therefore void as against public policy. UOSA filed a demurrer which the trial court sustained by letter opinion dated July 11, 2001, but with

3

leave to amend.  The Joint Venture filed an Amended Motion for Judgment and Declaratory Judgment to which UOSA filed another demurrer.  The trial court again sustained UOSA's demurrer in reliance on the July 11, 2001 letter opinion, but without further leave to amend.

UOSA filed a Plea in Bar to approximately 60 of the specific work claims pled by the Joint Venture, asserting failures to comply in a timely manner with various notice requirements.[2]  Some of the bars raised by the Plea in Bar were tried to a jury in September 2001, including the dispute over Work Order 248 which is at issue in this appeal.  UOSA issued Work Order 248, which removed specific work from the Project, on April 12, 2000.  Subsequently, on September 12, 2000, UOSA issued Unilateral Change Order No. 100 ("UCO 100") which reduced the Contract price to reflect the elimination of work under Work Order 248.  UOSA alleged the Joint Venture failed to file a Notice of Claim until October 2, 2000, over four months after UOSA asserts it was due and therefore no claim arising from Work Order 248 could be made by the Joint Venture.

Both parties submitted proposed verdict forms at the close of trial.  The trial court substantially adopted UOSA's proposed

---

[2] Some of the issues raised in the Plea in Bar are the subject of an appeal by UOSA also decided today by this Court in Upper Occoquan Sewage Authority v. Blake Construction Co., Inc./Poole & Kent, 266 Va. ___, ___ S.E.2d ___ (2003).

form rather than the form proffered by the Joint Venture.  After the jury issued its verdict, the Joint Venture moved to set aside the verdict regarding Work Order 248 on the grounds that General Condition 104 of the Contract did not require a Notice of Claim for a reduction in the Contract price.  The trial court denied the motion by order dated November 30, 2001.

The Joint Venture moved for entry of an order of voluntary nonsuit in the consolidated cases, which the trial court granted on June 7, 2002.  The Joint Venture has appealed the matters dismissed with prejudice by the trial court prior to the order of nonsuit: the jury verdict on Work Order 248 and sustaining of the demurrer to its declaratory judgment action.  We granted the Joint Venture an appeal.

## II.  STANDARD OF REVIEW

Well-settled principles of appellate review guide our analysis when error is assigned to the sustaining of a demurrer.

> A demurrer admits the truth of the facts
> contained in the pleading to which it is
> addressed, as well as any facts that may be
> reasonably and fairly implied and inferred from
> those allegations . . . .  A demurrer does not,
> however, admit the correctness of the pleader's
> conclusions of law.

Yuzefovsky v. St. John's Wood Apts., 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001) (internal citation omitted).  Therefore, we consider the facts stated in the motion for declaratory judgment, and those reasonably implied and inferred, in a light

5

favorable to the Joint Venture, the party against whom the demurrer was filed.  We consider de novo, however, the sufficiency of the trial court's legal conclusions made as to those facts.

We will uphold the judgment of the trial court unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.  Code § 8.01-680; Nationwide Mut. Ins. Co. v. St. John, 259 Va. 71, 76, 524 S.E.2d 649, 651 (2000) (citing RF&P Corporation v. Little, 247 Va. 309, 319, 440 S.E.2d 908, 915 (1994)).

> [T]he trial court's authority to set aside a jury verdict "can only be exercised where the verdict is plainly wrong or without credible evidence to support it.  If there is a conflict in the testimony on a material point, or if reasonable [persons] may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury."

Shalimar Dev., Inc. v. Federal Deposit Ins. Corp., 257 Va. 565, 569-70, 515 S.E.2d 120, 123 (1999) (quoting Lane v. Scott, 220 Va. 578, 581, 260 S.E.2d 238, 240 (1979)).

### III.  ANALYSIS

A. Are Contract provisions 91.K and 91.L void as against public policy under Code § 2.2-4335(A) and therefore unenforceable?

In the absence of a contractual provision to the contrary, a contractor whose performance is delayed by the actions of a

6

public owner may be entitled to monetary relief for damages caused by the delay as well as an extension of time for performance.  See Atlantic Coast Line R.R. Co. v. A. M. Walkup Co., 132 Va. 386, 390, 112 S.E. 663, 664 (1922); Susan S. Dunne, "No Damage for Delay" Clauses, 19 APR Construction Lawyer 38 (1999).  However, contract provisions in construction contracts prohibiting monetary damages for owner-caused delay have become commonplace.  See Maurice T. Brunner, Annotation, Validity and Construction of "No Damage" Clause with Respect to Delay in Building or Construction Contract, 74 A.L.R.3d 187 § 2[a] (1976).  Although a majority of courts have recognized the validity of such "no damage for delay" provisions, some take a restrained view of such clauses because of their harshness.  Id. at 201.  As such, certain delays caused by owner conduct have been recognized as exceptions to the general rule of enforcement of "no damages for delay" clauses.  Id.  Those exceptions vary from state to state and could include delay caused by the owner's fraud, bad faith, active interference, gross negligence or abandonment of the contract.  Williams Electric Company, Inc. v. Metric Constructors, Inc., 480 S.E.2d 447, 448 (S.C. 1997).

"No damage for delay" clauses can be punitively detrimental to contractors and many states have limited or prohibited such contract provisions particularly in the context of construction contracts with public entities.  As of 2002, at least thirteen

7

states had adopted legislation affecting "no damage for delay" clauses, and the courts of twenty-two states and the District of Columbia had recognized at least one judicial exception to such clauses.  See Alain Lecusay, The Collapsing "No Damages for Delay" Clause in Florida Public Construction Contracts:  A Call for Legislative Change, 15 St. Thomas L. Rev. 425, 446 (2002).

Virginia is among the states that address "no damage for delay" clauses by statute.  In 1991, the General Assembly enacted what was then § 11-56.2, the current version of which reads:

> Any provision contained in any public construction contract that purports to waive, release, or extinguish the rights of a contractor to recover costs or damages for unreasonable delay in performing such contract, either on his behalf or on behalf of his subcontractor if and to the extent the delay is caused by acts or omissions of the public body, its agents or employees and due to causes within their control shall be void and unenforceable as against public policy.

Code § 2.2-4335(A).

No Virginia case, however, has addressed the enforcement of a "no damages for delay" clause, whether exceptions might be recognized as a matter of Virginia common law to such a clause or what constitutes "unreasonable delay" under Code § 2.2-

4335(A).[3]  Our case law does recognize the general rule, not limited to construction cases, that loss resulting from unreasonable delay is recoverable as damages.  A. M. Walkup Co., 132 Va. at 390, 112 S.E. at 664.

The issue of first impression in this case is whether provisions like General Conditions 91.K and 91.L of the Contract between UOSA and the Joint Venture violate the statutory prohibition of Code § 2.2-4335(A) and are therefore void as against public policy.  General Condition 91.K provides in pertinent part:

> An extension of time shall be the sole remedy under the Contract for any delay caused by any reason or occurrence.  The Contractor acknowledges such extension of time to be its sole remedy hereunder and agrees to make no claim for damages of any sort for delay in the performance of the Contract for any reason, including but not limited to delay occasioned by any act or failure to act of the Owner . . . .

This blanket prohibition on delay damages is retracted, however, by General Condition 91.L which provides in pertinent part:

> Notwithstanding the foregoing, the Contractor shall be entitled to additional compensation for the actual

---

[3] Prior to enactment of Code § 2.2-4335, we did note in Algernon Blair, Inc. v. Norfolk Redevelopment and Housing Authority, 200 Va. 815, 819, 108 S.E.2d 259, 263 (1959), that the issue of whether the parties intended a "no damage for delay" clause to permit recovery by the contractor for the owner's direct interference with the contractor's work was a question of fact which precluded summary judgment under the facts of that case.

9

direct costs proximately and foreseeably resulting from unreasonable delay caused by the Owner or the Engineer due to causes within their control. As a condition precedent to any entitlement to such additional compensation for unreasonable delay, the Contractor shall satisfy all Notice and submission requirements set forth in the Contract Documents for approval of any extension of Contract Time or any change in the Contract Price. The term "unreasonable delay" as used herein, shall apply only to the portion of any delay which is on the Critical Path as established by the Project Schedule in effect at the time of the asserted delay, and which is determined to be both unreasonable and not in any way the fault of the Contractor, and not to the entire duration of such delay, and which is (i) caused by the bad faith or willful, malicious or grossly negligent conduct of the Owner or the Engineer, or (ii) so severe that it constitutes an abandonment of the Contract by the Owner, or (iii) results from a failure of the Owner to meet its payment obligations to the Contractor, to provide Owner supplied materials or Equipment, if any, or to secure permits, rights-of-way, or easements for the procurement of which the Owner is responsible and which are necessary and indispensable to the prosecution of the Work.

General Condition 91.K, if considered alone, directly conflicts with Code § 2.2-4335(A) and would be void and unenforceable. However, General Condition 91.L mitigates the outright prohibition of unreasonable delay damages in General Condition 91.K. Accordingly, this case revolves around General Condition 91.L (i), (ii), and (iii) which the Joint Venture claims act as a prohibited bar to recovery for unreasonable delay damages.

In its amended motion for declaratory judgment, the Joint Venture attacks the provisions of General Condition 91.L (i),

10

(ii) and (iii) that bar delay damages where the delay is "both unreasonable and . . . caused by the bad faith or willful, malicious or grossly negligent conduct of the Owner . . ., or . . . an abandonment of the contract by the Owner, or . . . a failure of the Owner to meet its payment obligations . . . ."[4] (Emphasis added). The Joint Venture contends the plain language of Code § 2.2-4335(A), that "Any provision . . . that purports to waive, release, or extinguish the rights of a contractor to . . . damages for unreasonable delay . . . shall be void and unenforceable as against public policy," nullifies the bar of General Condition 91.L for unreasonable delay damages except when bad faith, malice, gross negligence or abandonment exist.

The trial court rejected this argument, determining that bad faith, malice, gross negligence or abandonment define unreasonable delay and is therefore not forbidden under Code § 2.2-4335(A). The trial court's letter opinion ruled as follows:

> . . . the contract at issue specifically permits recovery for "unreasonable delay" caused by UOSA. See General Condition 91(L). Nothing in Code § [2.2-4335(A)] prohibits the parties from agreeing upon a definition of what will constitute an "unreasonable delay." The contract's definition of "unreasonable

---

[4] For convenience, we will refer to the items in General Condition 91.L (i), (ii), and (iii) collectively as "bad faith, malice, gross negligence or abandonment," but this term shall be inclusive of all the stated provisions.

delay" is not repugnant to Code § [2.2-4335(A)] or violative of Virginia's public policy.

Indeed, UOSA argues on appeal that so long as the parties do not, by contract, fully extinguish all monetary relief for the contractor who is the victim of some type of unreasonable delay, then no violation of the statutory prohibition occurs. UOSA contends that since the statute does not specifically forbid "restriction" of unreasonable delay damages, a public construction contract can prohibit such damages so long as some type of unreasonable delay damage is available regardless of how minimal or remote. We disagree with UOSA and the trial court. The plain language of the statute and the statute's express identification of permitted exceptions to the prohibition of limitations on unreasonable delay damages require reversal of the trial court's judgment.

While courts will not rewrite a clear and unambiguous contract between parties sui juris, Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983), a court is bound to follow the plain meaning of a statute. Earley v. Landsidle, 257 Va. 365, 370, 514 S.E.2d 153, 155 (1999) ("[W]hen the language in a statute is clear and unambiguous, the courts are bound by the plain meaning of that language."). In addition, "a contract to perform an act prohibited by a statute is void." Palumbo v. Bennett, 242 Va. 248, 251, 409 S.E.2d 152, 153 (1991).

12

UOSA's demurrer implicitly admits as true, as it must, the allegations of the motion for declaratory judgment. McDermott v. Reynolds, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000) ("In reviewing a trial court's judgment sustaining a demurrer, we will consider as true the facts alleged in the motion for judgment, the facts impliedly alleged therein, and the reasonable factual inferences that can be drawn from the facts alleged."). So viewed, we accept as factual the Joint Venture's allegations that it has experienced unreasonable delay caused by UOSA resulting from (i) "numerous, extensive changes and additions to the work," (ii) "deficiencies in the plans and specifications provided by UOSA," (iii) untimely and inadequate clarification or correction of conflicts and inconsistencies in the plan, (iv) refusal "to allow the Contractor access to the Project site," (v) "changes in the means, methods and sequences for performance of the work," and (vi) "failure to timely and adequately process submittals of proposed materials and equipment." By its plain terms, the Contract bars damages for these unreasonable delays caused by UOSA because the delay is not "both unreasonable and . . . caused by the" bad faith, malice, gross negligence or abandonment of UOSA. Pursuant to the trial court's ruling, all these admitted instances of unreasonable delay are waived, extinguished, and released by the

13

Joint Venture through the operation of General Condition 91.L. The plain language of the statute mandates the opposite result.

Code § 2.2-4335(A) means what it says: "<u>Any</u> provision . . . to waive, release, or extinguish the rights of a contractor . . . shall be void." The General Assembly's use of the inclusive and comprehensive term "any" is instructive and mandatory. Without question, the provisions in General Condition 91.L of the Contract waive, release, and extinguish all unreasonable delay damages available to the contractor, the Joint Venture, unless the unreasonable delay is coupled with UOSA's bad faith, malice, gross negligence or abandonment of the Contract. Such a contract provision contradicts the specific statutory prohibition of Code § 2.2-4335(A). If an expansion or constriction of the blanket prohibition found in Code § 2.2-4335(A) is to be created, that authority must come from the General Assembly and not the parties or the judiciary.

UOSA contends that the unreasonable delay damages for bad faith, malice, gross negligence or abandonment permitted by the Contract are the most widely recognized exceptions to the "no damages for delay" rule adopted by most American courts. <u>See</u> <u>Metric Constructors, Inc.</u>, 480 S.E.2d at 448. Accordingly, UOSA argues that the General Assembly intended for Code § 2.2-4335(A) to codify the common judicially created exceptions. The plain language of the statute repudiates this argument.

14

The General Assembly has determined that in public construction contracts damages for unreasonable delay may not be extinguished as a matter of public policy. If the legislature intended to permit the contractor to extinguish or waive unreasonable delay damages in part by contract, it certainly could have done so by codifying the purported exceptions UOSA relies upon. Instead, the General Assembly broadly prohibited "[a]ny provision . . . to waive, release, or extinguish . . . damages for unreasonable delay." In such a circumstance, parties may not contract to the contrary, and undo what the General Assembly has determined to be the public policy of the Commonwealth. See Blick v. Marks, Stokes & Harrison, 234 Va. 60, 64, 360 S.E.2d 345, 348 (1987) ("Generally, a contract based on an act forbidden by a statute is void and no action will lie to enforce the contract.").

In the context of a contract under the VPPA, unreasonable delay damages are to be determined by the court under the facts and circumstances of each case. Contract limitations on the contractor's right to damages for unreasonable delay are thus forbidden except to the extent enumerated by the General Assembly under Code § 2.2-4335(B) or other specific statutory enactment. "Our construction of the statute is governed by the maxim expressio unius est exclusio alterius, which provides that the mention of a specific item in a statute implies that other

omitted items were not intended to be included in the scope of the statute." Smith Mountain Lake Yacht Club, Inc. v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001).

To obtain damages for unreasonable delay caused by UOSA, the Joint Venture must meet certain conditions precedent under General Condition 91.L. First, it must fulfill the Contract's notice requirements which are specifically sanctioned by Code § 2.2-4335(B)(2) as an exception to the Code § 2.2-4335(A) prohibition. Further, recoverable damages are limited to those within the owner's control, a specific exception permitted by Code § 2.2-4335(A).[5] Those limitations are not by implication, but only a matter of express legislative grace in view of the clear and absolute language of Code § 2.2-4335(A). We must assume the General Assembly, having specified exceptions to the statutory prohibition, intentionally excluded any others. Smith Mountain Lake Yacht Club, 261 Va. at 246, 542 S.E.2d at 395. It is a matter for the General Assembly's determination as to whether other limitations are permitted.

UOSA also argues the Contract's prohibition on unreasonable delay damages absent bad faith, malice, gross negligence or abandonment is simply what the General Assembly meant to say

---

[5] The contract also limits delay damages to delay that is part of the "Critical Path." No issue has been raised as to this provision and we express no opinion thereon.

constituted unreasonable delay.  Citing <u>Williams Electric Co. v. Metric Constructors, Inc.</u>, UOSA contends the legislative term "unreasonable delay" is shorthand for the panoply of judicially recognized exceptions.  However, in its opinion the Supreme Court of South Carolina only uses the term "unreasonable delay" in conjunction with its adoption of the abandonment exception. <u>Metric Constructors, Inc.</u>, 480 S.E.2d at 449-50.  That Court does not use the term with the all-encompassing breadth suggested by UOSA.  UOSA cites no other case, statute or treatise to support its contention that the term "unreasonable delay," as used in Code § 2.2-4335(A), should be read as an effort by the General Assembly to incorporate the broad variety of exceptions.  As noted above, the General Assembly could have written the statute as UOSA suggests, but declined to do so.

For all the foregoing reasons, the provisions of General Condition 91.L barring the Joint Venture's claim for unreasonable delay damages, except upon UOSA's bad faith, malice, gross negligence or abandonment, are void and unenforceable as against public policy under the provisions of Code § 2.2-4335(A).  It was therefore error for the trial court to sustain UOSA's demurrer to the Joint Venture's amended motion for declaratory judgment.  Accordingly, we will reverse the judgment of the trial court sustaining UOSA's demurrer.

B.  Work Order 248

17

The Joint Venture assigns error to two interrelated issues regarding Work Order 248. The Joint Venture first contends that its claim on Work Order 248 should not have been dismissed as untimely because the Contract does not require a written notice of claim when work is deleted from the Contract and the Contract Price reduced. Alternately, the Joint Venture argues that if a written notice of claim was required, the special jury verdict on which the trial court based its affirmation of UOSA's plea in bar was inadequate as a matter of law. We disagree with the Joint Venture.

### 1. Notice of Claim Was Required To Be Given

Citing Contract General Condition 104.A, the Joint Venture contends that because the Contract does not specifically address claims arising from a price adjustment for work deleted from the Contract, no notice of claim was required and therefore its claim should not have been dismissed pursuant to UOSA's plea in bar. However, the Contract's definition of terms supports UOSA's contention that once UCO 100 was issued, resulting in a reduction of the Contract Price by $69,000.00, that act "reset" the defined term "Contract Price" under the Contract. That event had the effect of converting the Joint Venture's claim into one for additional funds beyond the adjusted Contract Price under General Condition 104.A, which provides in pertinent part:

18

In any case where the Contractor deems it is due additional compensation beyond the Contract Price, the Contractor shall give written Notice of such claim to the Owner and to the Engineer at the time of the discovery of the occurrence of the event giving rise to the claim and before beginning any Work on which the claim is based.

The Contract defines the term "Contract Price" as "[t]he total compensation to be paid the Contractor for performance of all requirements of the Contract Documents." "Contract Documents" is defined to include "the signed contract . . . and all supplemental agreements or changes to the Contract documents . . . in accordance with General Conditions, Article 40, Changes in the Work."

General Condition 40, in turn, provides that the owner "may order changes in the Work . . . altering, adding to, or deducting from the Work", with the Contract Price being adjusted accordingly. General Condition 40 also sets out the methods by which the change in the work can be accomplished, including the use of a unilateral change order as in this case.

The Contract thus adjusts the defined term "Contract Price" when a change in the work is made under General Condition 40. Such a change occurred in this case when UCO 100 redefined the Contract Price by the amount of the $69,000 deduction. Under the plain language of General Condition 104.A, the Contractor was then required to give notice to UOSA that it was claiming additional compensation beyond the Contract Price.

While clarity might have been better served by a more specific provision, the defined terms of the Contract answer the Joint Venture's argument.  General Condition 104.A required notice when the Joint Venture sought to claim additional compensation beyond the Contract Price, as adjusted, which includes the circumstance where a deduction from work resets the Contract Price.  Whether that notice was timely given then became an issue for the jury to determine and its verdict will not be set aside unless "plainly wrong." Shalimar Dev., Inc. v. Federal Deposit Ins. Corp., 257 Va. 565, 569, 515 S.E.2d 120, 123 (1999).

2.   The Special Jury Verdict Form Was Sufficient

The Joint Venture further argues that if notice was required for the reduction in price occasioned by Work Order 248 and UCO 100, the verdict form used by the trial court was incorrect and a jury verdict could not be based upon it.  The Joint Venture contends the verdict form proposed by UOSA, and adopted by the trial court, was defective in stating that notice was required to be given at the time the work order was issued. That verdict form provided:

> We the Jury find that the Joint Venture ____ did ____
> not give to UOSA notice of a claim disputing the
> amount by which this Work Order reduced the Contract
> Price at the time the Work Order was issued.

20

The Joint Venture argues the proper jury issue was whether timely notice of claim was given when UCO 100, which actually reduced the Contract Price, was issued. The absence of a jury finding on that point, the Joint Venture contends, renders the trial court's judgment void because it could not infer facts not found by the special verdict form used.

Although the Joint Venture's failure to raise an objection to the jury form at the trial level would usually bar objection on appeal, see Rule 5:25; Buck v. Jordan, 256 Va. 535, 545-46, 508 S.E.2d 880, 885-86 (1998) ("We have repeatedly refused to consider . . . objections raised for the first time on appeal."), the Joint Venture's failure to object at trial to the trial court's submission of the adopted UOSA special verdict form to the jury is not necessarily a bar where a verdict form was proffered which reflects the issue.

In Pilot Life Insurance Co. v. Karcher, 217 Va. 497, 229 S.E.2d 884 (1976), this Court held that, because the party objecting to a jury instruction had, in a refused instruction, propounded a theory contrary to the one set forth in the granted instruction, timely objection was made. Id. at 498, 229 S.E.2d at 885; see also Atkins v. Commonwealth, 257 Va. 160, 178, 510 S.E.2d 445, 456 (1999) (citing Pilot as grounds for finding the issue preserved for appeal where defense counsel consistently

stated a preference for the form he submitted to the trial court).

Scrutiny of the Joint Venture's proffered form, however, reveals it falls short of being sufficiently contradictory to UOSA's form so as to fall within the Pilot and Atkins exception. The Joint Venture's proffered verdict form provided: "Has UOSA met its burden of proof to establish that Article 104 of the General Conditions to the Contract applies to Deductive Work Order 248, which reduced the Joint Venture's compensation under the Contract?"

The Joint Venture's proffered form makes no mention of the unilateral change order it now contends prompted the notice requirement. Instead, the Joint Venture's proffered form actually used in this case goes only to the issue of whether notice was required for Work Order 248. As the Joint Venture's proffered form did not deal with the specific factual inquiry it now raises, its objection has not been preserved for appeal and is therefore waived. Rule 5:25.

## IV. CONCLUSION

For the reasons stated herein, we will reverse the trial court's order granting UOSA's demurrer to Count I of the Joint Venture's Amended Motion for Judgment and Declaratory Judgment. We will affirm the judgment of the trial court in dismissing the Joint Venture's claim as to Work Order 248. The case will be

remanded for further proceedings in accordance with this opinion.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded.</u>