Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

MARTIN BROS. CONTRACTORS, INC.

                                        OPINION BY
v.  Record No. 081403       SENIOR JUSTICE CHARLES S. RUSSELL
                                        April 17, 2009
VIRGINIA MILITARY INSTITUTE

            FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                      Michael S. Irvine, Judge

    This appeal requires the Court to decide whether the
terms of a public construction contract, purporting to limit a
contractor's recovery of damages for construction delay caused
by a public body, are rendered void by Code § 2.2-4335.

                        Facts and Proceedings

    The facts pertinent to this appeal are undisputed and the
parties agree that the case presents a pure question of law.
In April 2004, Martin Bros. Contractors, Inc. (Martin), a
licensed contractor, entered into a construction contract with
Virginia Military Institute (VMI), a public educational
institution organized as a public corporation pursuant to Code
§ 23-92.  The contract provided for the renovation of Crozet
Hall, the main dining facility on the VMI campus.  Due to
changes in the project requested by VMI, completion of the
project was delayed by 270 days.  The causes of the delay were
entirely attributed to VMI and not to Martin or the weather.

    Martin claimed $430,242.56 as damages for delay, plus the
costs of recovery.  VMI admitted that Martin was without fault

in causing the delay and paid Martin $99,646.20 of the claimed delay damages. VMI relied upon the terms of the contract in limiting the amount of damages payable and contended that the parties were bound by those terms. Martin admitted that the terms of the contract purported to limit the damages recoverable, but contended that those terms were void and unenforceable as against public policy by virtue of Code § 2.2-4335.

Martin brought this action against VMI seeking recovery of the full amount of its claim. The parties submitted the case to the circuit court on cross-motions for summary judgment. By letter opinion, the court ruled that the contract provisions relied on by VMI were enforceable as liquidated damages provisions expressly permitted by Code § 2.2-4335 and did not have the effect of unfairly insulating VMI entirely from damages for delay. The court entered an order granting VMI's motion for summary judgment, denying Martin's motion and dismissing Martin's complaint. We awarded Martin an appeal.

Analysis

This case turns on the interpretation of Code § 2.2-4335, which provides in pertinent part:

**Public construction contract provisions barring damages for unreasonable delays declared void.**

A.  Any provision contained in any public construction contract that purports to waive, release, or extinguish the rights of a contractor to recover costs or damages for unreasonable delay in performing such contract, either on his behalf or on behalf of his subcontractor if and to the extent the delay is caused by acts or omissions of the public body, its agents or employees and due to causes within their control shall be void and unenforceable as against public policy.

B.  Subsection A shall not be construed to render void any provision of a public construction contract that:

. . . .

3.  Provides for liquidated damages for delay[.]

. . . .

D.  A public body denying a contractor's claim for costs or damages due to the alleged delaying of the contractor in the performance of work under any public construction contract shall be liable to and shall pay such contractor a percentage of all costs incurred by the contractor to investigate, analyze, negotiate, litigate and arbitrate the claim.  The percentage paid by the public body shall be equal to the percentage of the contractor's total delay claim for which the public body's denial is determined through litigation or arbitration to have been made in bad faith.

In Blake Construction Co. v. Upper Occoquan Sewage Authority, 266 Va. 564, 587 S.E.2d 711 (2003), we construed and applied the foregoing statute.  We held that it "means what it says:  'Any provision . . . to waive, release, or extinguish the rights of a contractor . . . shall be void.' " (Emphasis in original.)  Id. at 576, 587 S.E.2d at 717-18.

3

Applying the principle expressio unius est exclusio alterius, we held that any provision in a public contract that purported to limit or restrict a contractor's right to recover delay damages was void as against public policy unless it was specifically enumerated by Code § 2.2-4335(B) or other specific statutory enactment. Id. at 577, 587 S.E.2d at 718. The circuit court decided that Blake was not controlling and that this was a case of first impression. For the reasons stated below, we do not agree.

The contract language on which VMI relies appears in the General Conditions (GC) that form a part of the contract. GC 43(b) provides that the contractor may recover damages for owner-caused delay in the work, provided the delay is "unreasonable." In such an event, the contractor is permitted to submit a change order in accordance with GC 38 adding additional days for completion of the work. GC 38(e)(6) provides:

> [T]he following Site direct overhead expenses for the change to the time may be considered . . . :
>
>> The Site superintendent's prorata salary, temporary Site office trailer expense, and temporary Site utilities including basic telephone service, electricity, heat, water, and sanitary / toilet facilities. All other direct and indirect overhead expenses are considered covered by and included in the Subsection (d) markups above.

GC 38(f)(2) and (3) provide:

(f) Allowable costs for changes in the Work shall not include the following:

. . . .

(2) Home office expenses including payroll costs for the Contractor's officers, executives, administrators, project managers, accountants, counsel, engineers, timekeepers, estimators, clerks, and other similar administrative personnel employed by the Contractor, whether at the Site or in the Contractor's principal or branch office for general administration of the Work.  These costs are deemed overhead included in the percentage markups allowable in Subsection (d) above.

(3) Home and field office expenses not itemized in Subsection 38(e)(6) above.  Such items include, but are not limited to, expenses of Contractor's home and branch offices, Contractor's capital expenses, interest on Contractor's capital used for the Work, charges for delinquent payments, small tools, incidental job costs, rent, utilities, telephone and office equipment, and other general overhead expenses.

(Emphasis added.)

Martin claimed site delay damages amounting to $225,937.40 and home office delay damages amounting to $204,305.16.  Relying on the limitations above, VMI refused to pay any site damages beyond $99,646.20 and refused to pay any home office damages at all, asserting that the GC provisions quoted above, read with GC 38(d), barred their recovery.

GC 38(d) provides, in pertinent part:

(d)  The percentage for overhead and profit to be used in calculating both additive and deductive

changes in the Work (other than changes covered by unit prices) shall not exceed the percentages for each category listed below.  Said percentages for overhead and profit shall be applied only on the net cost of the changed Work (i.e. difference in cost between original and revised Work):

> (1)  If a Subcontractor does all or part of the changed Work, the Subcontractor's markup for overhead and profit on the Work it performs shall be a maximum of fifteen percent (15%). The Contractor's mark-up on the subcontractor's price shall be a maximum of ten percent (10%).

> (2)  If the Contractor does all or part of the changed Work, its markup for overhead and profit on the changed Work it performs shall be a maximum of fifteen percent (15%).

VMI contends that all the claimed home office expenses and all site expenses beyond $99,646.20 are included in the markups contained in GC 38(d), quoted above.  VMI argues that the quoted clauses are, in reality, liquidated damage provisions expressly permitted by Code § 2.2-4335(B)(3).  The circuit court agreed with VMI, observing that under Virginia law, "contracting parties are not forbidden to agree in advance on how damages will be calculated."

As a general statement, the circuit court's observation is valid, but its application to the facts of this case depends on whether the parties had actually entered into any agreement for the calculation of delay damages.  The flaw in VMI's argument is that the markup provisions quoted above provide compensation to the contractor for added work required

6

by the owner's change orders but provide no compensation whatever for extra expense incurred by the contractor purely as a result of delay.  Martin points out that if, for example, VMI issued a change order requiring extra work, but Martin were nevertheless able to complete the entire project on time, Martin would be entitled by the contract to a 15% markup on the cost of the extra work to compensate Martin for administration costs and profit for performing the extra work. If, however, the extra work required a year's delay in the completion of the project, Martin would receive the very same 15% markup on the cost of the extra work, but nothing at all for delay.

The markup provisions of GC 38(d), quoted above, are liquidated damage provisions to cover additional expense the contractor may incur for administration, plus agreed profit, for extra work required by the owner's change orders.  They are not an agreed formula for the calculation of damages for delay and, therefore, are not liquidated damage provisions contemplated by Code § 2.2-4335(B)(3).  As a result, the contract provisions operate as an absolute bar to most of the delay expenses incurred by Martin and, therefore, are void and unenforceable as against public policy by virtue of Code § 2.2-4335.

## Conclusion

Because we adhere to the analysis of the effect of Code § 2.2-4335 we adopted in <u>Blake Construction Co.</u>, and because we hold that analysis to be controlling in this case, we will reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>